---
In the matter of Bruni.
---

The covenant sued on was a joint covenant. (*Platt on Cov.* 115, 122, 123.) And if the Heartts were released, then all the covenantors were discharged.

Same Term.   *Before the same Justices.*

In the matter of Paul Bruni.

The act of congress entitled " An act to provide for the apprehension and delivery of deserters from certain foreign vessels in the ports of the United States," passed March 2d, 1829, confers no power upon any but courts and officers of the United States. And no court, judge, justice, or other magistrate of this state, can lawfully assume to execute its requirements.

The proceedings, upon an application under that act, against an alleged deserter from a foreign vessel, must show that the person proceeded against deserted from the vessel while in a port of the United States.

Unless that fact appears, the officer to whom application is made will not obtain jurisdiction to act upon the complaint.

It is in the discretion of the court either to allow a writ of certiorari in the first instance, or to grant an order to show cause.

The supreme court has power to review, upon certiorari, the proceedings of a magistrate of this state who, while professing to exercise a jurisdiction conferred by act of congress, acts in the name of the people of this state, by writs of the people, directed to state officers.

This matter came before this court on the return of two certioraris; one directed to Judge Edwards of the supreme court, and the other to William W. Drinker, one of the special justices appointed under the laws of this state for preserving the peace in the city of New-York. The facts of the case are these:

In the matter of Bruni.

Paul Bruni, a Swiss, shipped on board the French steamship Philadelphia, a vessel in the employ of the French Transatlantic Steam Navigation Company, in the month of July last, as a domestic, for the voyage from Cherbourg in France, to New-York, and back.   On the arrival of the steamer at New-York, Bruni left the vessel, alleging that he had been cruelly treated by the captain.   Application was then made to Mr. Drinker, the special justice, for the arrest of Bruni as a deserter.   The application was made under the act of congress, entitled "An act to provide for the apprehension and delivery of deserters from certain foreign vessels in the ports of the United States," passed March 2d, 1829, which is in these words: "Sect. 1. *Be it enacted, &c.* That on application of a consul or vice consul of any foreign government having a treaty with the United States, stipulating for the restoration of seamen deserting, made in writing, stating that the person therein named, has deserted from a vessel of any such government while in any port of the United States, and on proof by the exhibition of the register of the vessel, ship's roll or other official document, that the person named belonged, at the time of the desertion, to the crew of said vessel, it shall be the duty of any court, judge, justice, or other magistrate having competent power to issue warrants, to cause the said person to be arrested for examination: and if on examination, the facts stated are found to be true, the person arrested not being a citizen of the United States, shall be delivered up to the said consul or vice consul, to be sent back to the dominions of any such government, or on the request and at the expense of the said consul or vice consul, shall be detained until the consul or vice consul finds an opportunity to send him back to the dominions of any such government: *Provided nevertheless*, that no person shall be detained more than two months after his arrest, but at the end of that time shall be set at liberty, and shall not be again molested for the same cause: *And provided further*, that if any such deserter shall be found to have committed any crime or offence, his surrender may be delayed until the tribunal before which the case shall be de-

In the matter of Bruni.

pending, or may be cognizable, shall have pronounced its sentence, and such sentence shall have been carried into effect."

The sixth article of the treaty with France of June 25th, 1822, is as follows: "Art. 6. The contracting parties wishing to favor their mutual commerce, by affording in their ports every necessary assistance to their respective vessels, have agreed that the consuls and vice consuls may cause to be arrested the sailors, being part of the crews of the vessels of their respective nations, who shall have deserted from the said vessels, in order to send them back and transport them out of the country. For which purpose the said consuls and vice consuls shall address themselves to the courts, judges and officers competent, and shall demand the said deserters in writing, proving by an exhibition of the register of the vessel, or ship's roll, or other official documents, that those men were part of said crews: and on this demand so proved, (saving, however, where the contrary is proved,) the delivery shall not be refused: and there shall be given all aid and assistance to the said consuls and vice consuls for the search, seizure, and arrest, of the said deserters, who shall ever be detained and kept in the prisons of the country, at their request and expense, until they shall have found an opportunity of sending them back. But if they be not sent back within three months, to be counted from the day of their arrest, they shall be set at liberty, and shall be no more arrested for the same cause."

The application to the special justice was signed in the absence of the French vice consul, by Anthony Borg, his clerk, and bore the seal of the consulate impressed upon the paper. The French consul and vice consul had previously given authority to him to use their names, and the seal of the consulate, in cases of emergency. The application is as follows:

" *Consulat Général de France aux Etats Unis.*

"The consul general of France requests that the police magistrate will issue a warrant for the apprehension of a sailor belonging to the French steamship Philadelphia, Captain Bes-

son, viz. Paul Bruni, aged 26 years, deserted from the said vessel the 3d of this month. New-York, August 6, 1847.

[L. S.]      "For the Consul General.

"ANT. BORG, for Vice Consul."

At the time the application was presented to the special justice, a paper was exhibited to him, which he says in his return, he "was satisfied from inspection, was the role de equipage of the steamship Philadelphia, upon which appeared the name of the said Paul Bruni, designated as a domestique engaged for the voyage." The justice thereupon issued the following warrant for the arrest of Bruni. There were no witnesses examined, nor was any oath or affirmation taken in the matter.

State of New-York. City and county of New-York: To any constable or policeman of the city of New-York. Whereas, complaint on oath has been made before the undersigned, one of the special justices for preserving the peace in the said city, by Ant. Borg, that at the city and county of New-York, on the 3d day of August instant, one Paul Bruni did desert from the French steamship Philadelphia, Capt. Besson, the said Bruni being a regularly shipped seaman, still owing labor and service thereto. These are therefore, in the name of the people of the state of New-York, to command you, the said constable and policemen, and every of you, to apprehend the body of the said defendant, and forthwith bring him before me, or some other justice of the peace, for the city and county of New-York, at the police office, halls of justice, Centre-street, in the said city, to answer the said charge, and to be dealt with as the law directs.

Given under my hand and seal this 6th day of August, 1847.

W. WALN DRINKER.

On this warrant Bruni was arrested on the 11th of August in the evening, and lodged in the prison of the city of New-York, and on the following morning was brought before the special justice, when the following proceedings took place,

In the matter of Bruni.

as stated by the justice. " I duly examined him and told him he was charged with being a deserter from the steamship Philadelphia. I asked him what he had to say in relation to the charge; that he admitted, and said he had deserted, and assigned as a reason therefor, that he had been cruelly treated by the captain of the said steamship." This was the only examination had. No witnesses were sworn, nor was any other evidence taken. The justice thereupon issued the following warrant of commitment.

State of New-York, ss. By W. Waln Drinker, special justice, &c. To Emmanuel Joseph, one of the constables of the city and county of New-York. Paul Bruni having been arrested and brought before me, by virtue of a warrant issued by me, in pursuance of the act of congress, entitled " an act to provide for the apprehension and delivery of deserters from certain foreign vessels, in the ports of the United States," approved 2d March, 1829 : And it being found on examination before me that the facts stated in the said warrant are true, and the said Paul Bruni not being a citizen of the United States : I do hereby in pursuance of said act of congress, on the request of Ant. Borg, vice consul of the government of the French, order that the said Paul Bruni be detained at the expense of the said French vice consul, until he, the said French vice consul, finds an opportunity to send him back to the dominions of the said French government. Provided nevertheless, that the said Paul Bruni shall not be detained more than two months after his said arrest. These, therefore, are to command and authorize you, the said Emmanuel Joseph, constable, &c. to convey to the city prison of the city of New-York, the body of the said Paul Bruni, and deliver him to the keeper thereof; and you the said keeper to receive into your custody in the said prison, the body of the said Paul Bruni, and him safely to keep in such custody until the said French vice consul shall require that the said Paul Bruni be delivered up to him, to be sent back to the dominions of the said French government, or until he be delivered from such custody by due course of law. Provided

however, that the said Paul Bruni shall not be so detained more than two months after his said arrest. Given under my hand and seal this twelfth day of August, 1847.

W. WALN DRINKER.

A writ of habeas corpus was thereupon sued out, directed to the keeper of the city prison in whose custody Bruni was placed under the above commitment, and returnable before Henry P. Edwards, one of the judges of the supreme court at chambers. The keeper of the city prison returned the warrant of commitment of Justice Drinker as his authority for the detention of Bruni. To this return Bruni put in his answer, denying that he was or ever had been a sailor or seaman on board the steamship Philadelphia, or any part of the crew, and also stating in substance that he had been cruelly treated by the captain, the details of which he set forth ; that the special justice who made the commitment had no authority or jurisdiction in the matter, under the act of congress ; that no proper application in writing was made to the justice by the French consul or vice consul, and that the proceedings before the justice were had without oath or affirmation, and were irregular and void.

Evidence was then taken before judge Edwards, and it appeared that the application was made and signed in the absence of the French vice consul, by his clerk : that neither the consul or vice consul had seen it, but approved of the act of the clerk the moment they were informed of it, and that general authority had previously been given by them to the clerk to use their names, and the seal of the consulate, in cases of emergency ; that the proceedings before Justice Drinker were without oath or affirmation from any one, and that Bruni was engaged on board of the steamer under the general designation of " *domestique*."

*D. D. Field*, of counsel for Bruni, then moved for Bruni's discharge, and

*E. Sandford*, of counsel for the French vice consul, opposed.

In the matter of Bruni.

After argument, Mr. Justice Edwards denied the motion to discharge, and ordered Bruni to be remanded to the custody of the keeper of the city prison. The following opinion was given by

EDWARDS, J. At the commencement of the investigation, in this case, I decided that the commitment was *prima facie* legal, and justified the detention of the relator; that I had no power, under this proceeding, to examine into any question of mere error, irregularity, or want of form ; and that the only question before me was, whether the magistrate who issued the process of commitment had jurisdiction. (*The People* v. *Nevins*, 1 *Hill*, 154. 3 *Id.* 661, *note sub.* 31, *and cases there cited.*) It was not denied, on the contrary it was admitted, by the counsel for the relator, on the final argument, that this was the only proper subject of inquiry.

The commitment under which Bruni was detained, purported to be made in pursuance of the act of congress of 2d March, 1829. The act does not refer particularly to the French government. It refers to " any government having a treaty with the United States, stipulating for the restoration of seamen deserting." And it appears by reference to the 6th article of the treaty with France, that she had such a treaty with the United States as is required by the act. (8 *Stat. at Large*, 279, *art.* 6.)

As the first question is one of jurisdiction, the first inquiry is, at what stage of the proceedings did Justice Drinker obtain jurisdiction of the matter, if he obtained such jurisdiction at all? The answer to this, unquestionably, is that if all the proceedings were regular, up to the time when the relator was brought before the magistrate under the warrant issued by him, he then had jurisdiction both of the person, and of the subject matter. If he thus obtained jurisdiction, his subsequent decision, and commitment of the relator, are conclusive as far as this investigation is concerned, and I have no authority to review them.

By reference to the act of congress, it appears that there must be " an application of the consul or vice consul," which must be

VOL. I.   25

In the matter of Bruni.

" made in writing, stating that the person therein named has deserted," &c. and that " on proof by exhibition of the register of the vessel, ship's roll, or other official document, that the person named belonged, at the time of the desertion, to the *crew of said vessel*, it shall be the duty of any court, judge, justice or *magistrate having competent power to issue warrants*, to cause the said person to be arrested for examination."

There were four requisites nesessary to the regularity of the proceedings before Justice Drinker, previous to the examination. 1st. An application pursuant to the provisions of the statute. 2d. Proof, by exhibition of the ship's official document, that Bruni, at the time of the alleged desertion, belonged to the crew of the Philadelphia. 3d. That the magistrate should have had competent power to issue warrants. 4th. That the said magistrate should have caused the said Bruni to be arrested in a proper legal manner.

The first question is, as to the regularity of the application made to the magistrate.

It appeared on the investigation, by the testimony of Anthony Borg, that the captain of the Philadelphia called at the French consulate, in company with the consignee of the ship, and requested the witness to make an application for the restoration of Bruni, as a deserter. That he filled up a form, affixed the official consular seal to it, and signed it for the vice consul. That this was at about ten o'clock in the forenoon; that neither the consul nor the vice consul were present at the time. That he was a clerk in the office of the consulate, and had a general authority from the consul and vice consul to use their official name and seal in such cases. That the vice consul came into the office at about half past eleven o'clock, and on being informed of what the clerk had done, expressed his approbation.

The original application was produced before me, and was, in form, undoubtedly in compliance with the requisitions of the statute. But it was contended by the counsel for the relator that it was invalid, because it was made by the consul through

his agent, (although legally authorized for that purpose,) instead of being made by himself or the vice consul in person.

What was the character of the application? It was a simple ministerial act of the most ordinary kind. A mere request, requiring neither judgment, skill, nor ability to make it. As a general rule, ministerial authority can be delegated, unless there is some law, or some rule of policy, to the contrary. In this case the application determined nothing, and proved nothing. It did not constitute any part of the proof to be made before the magistrate, and was sufficient, according to every rule of policy, whether made by the consul in person, or through his duly authorized official agent. It was issued from the consulate, under the official seal of the consul general, by an authorized agent, and stated that " the consul general requested," &c. and was afterwards ratified by the vice consul. This it seems to me was a sufficient application by the vice consul, within the spirit and meaning of the treaty and of the act of congress.

The second inquiry is, was the proof before the magistrate sufficient to authorize the arrest of the relator?

It appeared before me that the *rôle d'equipage*, (or list of the crew,) of the ship was exhibited to Justice Drinker, at the time that he issued his warrant, and that Bruni's name was upon it. But it was contended that, although his name was upon this list of the crew, still he was not one of the crew, because he is called *domestique*, and not " seaman" or " sailor." It will be remembered that all that the statute requires is, that it shall appear from the official document of the vessel, that the person named belonged, at the time of the desertion, to the crew of the vessel. Nothing is said about his being a seaman or sailor. The official document, in this case, was the *rôle d'equipage*, (or list of the crew ;) and if Bruni's name appeared on this list, that was all that the statute required.

Third. Was Justice Drinker a magistrate, with competent power to issue warrants, within the provision of the statute? This was not denied on the argument ; but it was contended that the act itself is contrary to the provisions of art. 3, § 1, of the constitution of the United States, which declares that "the

judicial powers of the United States shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish." And that Justice Drinker being a state magistrate, the power could not be vested in him. The answer to this is, that this is not a judicial power of the United States; (*Const. U. S. art* 3, § 2; 3 *Story's Com. on Const.* § 1639, 1640;) that similar powers have been exercised by state magistrates with general approbation of the law; (*Conklin's Tr.* 400;) and I shall not take it upon myself, after the law has been acted upon and acquiesced in for nearly twenty years, to decide that it is unconstitutional.

As to the last subject of inquiry, it was contended that the warrant issued by the magistrate was not in the proper form. The statute does not say that the magistrate shall issue a warrant, but that "it shall be his duty to cause the said person to be arrested." The process used by Justice Drinker, in this case, was what is ordinarily called a warrant. There is no doubt that it contained all that was necessary to make a legal arrest; if it contained more, that was mere surplusage.

It was also contended that the arrest was illegal, because the warrant was issued without oath. The statute says nothing about an oath, and the warrant issued by Justice Drinker was not a process of the character alluded to by the constitution of the United States, as was urged by the counsel. (*Amendments to Constitution, art.* 4.)

If I am correct in these views, there was no want of jurisdiction in the magistrate who issued the process of commitment under which the relator was detained and imprisoned. The writ of habeas corpus must therefore be dismissed, and the said Paul Bruni remanded to the custody of the keeper of the city prison.

A writ of certiorari was then sued out of the supreme court, under the statute, (2 *R. S. 3d ed.* 668, § 84,) to bring up for review the proceedings before Judge Edwards.

Before this writ was returned, application was made *ex parte*, at the special term of the supreme court held by Judge Edmonds, for a writ of certiorari to bring up for review the proceed-

In the matter of Bruni.

ings before Mr. Drinker, the special justice. Judge Edmonds made an order that the writ issue, unless cause to the contrary be shown, on the following Monday; staying proceedings on the commitment of the special justice in the meantime, and directed that a copy of the order be served on the French vice consul and the keeper of the city prison. On the following Monday argument was had, and the writ was denied on the ground stated in the order, viz. " that this court (the supreme court) has no jurisdiction to grant the said writ; the said Drinker having acted under an act of congress and as an officer of the United States." The order was entered, however, without prejudice to any new application for the said writ, upon the same or other papers, at a general term of this court. The following is the opinion delivered by Judge Edmonds, on that occasion.

EDMONDS, J. I do not see how this court has any power to review the action of Justice Drinker in this case. Although he is a state officer, deriving his office from state appointment, yet he is *pro hac vice* an officer of the United States, deriving all his authority in this matter from the United States, acting under a law of the United States, in execution of a treaty of the United States.

In such cases we have no authority to interfere. The power of reviewing the justice's action is in the tribunals of the United States, and in them alone. When he acts as a magistrate appointed by the authorities of the state, in execution of state laws, we have supervision over him; but when he acts in execution of the laws and treaties of the United States, whether his power to act is conferred upon him either individually, by name, or by virtue of his local office, he is still an officer of the United States in that case, and amenable only to its tribunals for supervision. We have therefore no power to interfere to review his decision. Certiorari denied.

The counsel for Bruni immediately applied, ex parte, at the general term, and read the same affidavit of Bruni which was used in the first instance at the special term, the order and opin-

In the matter of Bruni.

ion of Judge Edmonds, and stated generally the nature of the case, and what had taken place at the special term ; and asked for an order to show cause why the writ should not issue, with a stay of proceedings in the meantime.

The court, after hearing the general merits of the case explained, *granted the writ in the first instance.*

The writ to Judge Edwards and the one to the special justice were both returned and filed at the same time ; upon which the court designated a day on which they would hear argument on both.

The attorney of the French consul then gave notice of a motion to quash the writ issued to the special justice ; and the motion was brought on in the morning of the day for which the hearing of the certiorari was set down. This motion was first heard.

*E. Sandford,* for the vice consul. I. The application to the court for the writ was irregular. It should have been made on notice. (12 *Wend.* 292.) II. The court will not exercise its discretionary power, unless good cause is shown, and it appears that the committing magistrate has done injustice. The policy of the act of congress, and the treaty, is against granting the writ. III. The supreme court of this state has no power to review the decision of Justice Drinker. He was acting under the constitution and laws of the United States, and was *pro hac vice* an officer of the United States. The power of this court to review the proceedings of inferior tribunals, to see that they keep within their jurisdiction, is limited to tribunals subordinate to them. Justice Drinker did not act as a tribunal inferior to this court, but as a tribunal inferior to the supreme court of the United States, and is subject only to its appellate power. He was not compelled to take cognizance of the case ; but having done so, he is responsible only to the courts of the Union, whose laws he has executed. IV. The powers given to Justice Drinker by the laws of this state are mere *qualifications* in him to exercise the powers given by the United States, to persons who are thus qualified. What he has *done* has been under an act of

congress.    Whether he has rightfully exercised that authority this court cannot determine.

V. The power of this court to remove by certiorari is co-extensive with its power of mandamus and prohibition, which can be issued only to its inferior tribunals.

*D. D. Field,* for Bruni.    I. It is in the discretion of the court to issue the writ in the first instance, or to grant an order to show cause.    The exercise of the discretion will depend upon the particular circumstances of each case.    It was necessary in this matter to act without delay, if the removal of Bruni from the country was to be prevented.    II. Leave having been given to apply at the general term, it was regular to make the application here in the same manner as it was made at the special term, ex parte ; which was done, and a similar order asked for. III. The supreme court of this state has jurisdiction to issue the writ of certiorari to bring up the proceedings of Justice Drinker for review.    1. The jurisdiction of this court, like that of the king's bench in England, extends to all persons residing in the state, or owing allegiance to it.    (20 *John.* 430.    3 *Hill,* 42.    1 *Paige,* 548.) · As to the jurisdiction of the king's bench, see 3 *Bl. Com.* 42 ;  *Bac. Abr. Certiorari.*    The only qualification of this rule is, that it shall not be exercised so as to control the courts or officers of the Union.    The two governments are independent in their respective spheres ; and neither can dictate to the other.    (3 *Story's Com. on Const.* § 1751.)    2. If it were a general principle that this court could not interfere with an act of a state magistrate done pursuant to a law of the Union, yet when, as in this case, that act is done in the name of the people of this state, by the writs of the people, directed to the executive officers of the people, the state, through the courts, must have some control over the acts, the process, and the execution.    The right of the state to control their own writs, and the execution of such writs by its own constables and policemen, seems indisputable.    3. The objection to the jurisdiction of this court, upon the general principle, assumes that Drinker was really, for the occasion, a general officer of the United

In the matter of Bruni.

States, exercising the jurisdiction with which he is clothed by congress, and over whose acts in that respect this state has no control. Neither of these assumptions can be supported. (1) He was not really, even for that occasion, a judicial officer of the United States, but a state magistrate, administering an act of congress. The proceeding is either civil or criminal. If civil, the parties are pursuing the remedy granted by congress in the local courts. If criminal, the government is commencing a prosecution against offenders, in aid of the French tribunals. In either case, the court is ours, and the authority is ours; while the right comes from congress. The acts of the magistrate were done by him as a justice of the state and *virtute officii*. Any other construction would oust our courts of appellate jurisdiction in all cases of prosecution in our courts under acts of congress; and even the case of *The United States* v. *Lathrop*, (17 *John.* 4,) could not have been carried to the court of errors if the parties had wished it. (2) He was not exercising the jurisdiction conferred by the act of congress. This is a point in controversy. It is one of the very reasons for which we ask a certiorari. We contend that he has not pursued the act of congress, and therefore has acquired no jurisdiction under it. It is the case of an officer of this state exercising an usurped power. He is as much unsupported by the act of congress, as if he had seized any stranger in the city. In any other case of usurped power—for example, an attempt to put in force here, under the forms of law, an act of the British parliament or the French legislature—this court would interfere. It is beyond dispute that a certiorari is a proper remedy though the act complained of is wholly void through defect of jurisdiction. (*Starr* v. *Trustees of Rochester*, 6 *Wend.* 564.) (3) The state has control over him, because if he acts at all, he acts so far, and so far only, as the state chooses to permit. A state magistrate is not bound to exercise the jurisdiction conferred on him by congress. If he does so, it is voluntary and by the comity of the state. The state gives him permission, express or implied ; and such permission necessarily reserves to the state a control over his acts. It is discretionary with the

---

*In the matter of Bruni.*

---

state to allow him to act; and therefore the state may control him. If the state had directed him to take jurisdiction, then a *mandamus* from this court would be the proper remedy to compel him to act. If the legislature had given an express permission, subject to qualifications, then a certiorari from this court would be the proper remedy to enforce the qualification. The implied permission may be, and doubtless is, subject to qualifications. If so, the writ is proper. In any view, this court must have the right to examine his proceedings by certiorari; and if the record may be brought here for any purpose it is enough. (4) If the federal government comes into the state court to enforce its laws, it submits itself to the *lex fori*, and must take the course of proceedings, and the chances of appeal, it finds there. Under the act of congress, the sessions and this court, even, might have been applied to as well as Justice Drinker. In that case could there have been no review?

CADY, P. J. delivered the opinion of the court. It is in the discretion of the court either to issue the writ of certiorari in the first instance, or to grant an order to show cause. The application in this case was regular, and the writ was properly issued, we have no doubt that this court has power to review the proceedings of Justice Drinker on certiorari. This court can control the writs of the people of this state; even though the justice acted without authority. We will hear argument on the return of the certioraris.

Judge *Edwards* sent up, with his return, copies of the petition for the habeas corpus, the writ issued by him, the return thereto, Bruni's answer to the return, the application to the special justice for the arrest of Bruni, the warrant of arrest issued by the justice, the warrant of commitment, and the extract taken before him from the *rôle de equipage* of the French steamship on which Bruni was designated as "*domestique.*" He did not return the evidence taken before him.

Justice *Drinker*, in his return, certified the application made by the vice consul to him, the warrant of arrest, the warrant of

commitment, and the extract from the *rôle de equipage* left with him ; and then went on to state—"And I further certify that no other order or process was made by me in relation to the said Paul Bruni, except the said papers marked B. and C. (the warrants of arrest and commitment given above,) that previous to the issuing the said warrant marked B." (*the warrant of arrest*) " a paper was exhibited to me which I was satisfied from inspection was the *rôle de equipage* of the steamship Philadelphia, upon which appeared the name of the said Paul Bruni designated as a " *domestique*" engaged for the voyage.

\*      \*      \*      \*      \*      \*      \*      \*

" And I further certify, that it was made known to me, by the keeper of the city prison, that the said Paul Bruni had been arrested pursuant to my warrant marked B." (*the warrant of arrest*) " on the evening of the 11th of August last, and lodged in the city prison (late at night time,) and accordingly on the morning of the 12th of August last aforesaid, I caused the said Paul Bruni to be brought before me ; when I duly examined him, and told him he was charged with being a deserter from the steamship Philadelphia. I asked him what he had to say in relation to the charge ; that he admitted and said that he had deserted, and assigned as a reason therefor that he had been cruelly treated by the captain of the said steamship. I thereupon, pursuant to such examination, made the warrant of commitment hereunto annexed marked C. (given above.) I return herewith all the papers and proofs on file in this office, or which were had or taken before me in this case."

" All the papers and proofs" consisted of the above papers certified and the above examination of Bruni.

Both certioraris were argued together.

*D. D. Field & David P. Hall,* for Bruni. I. The act of congress confers no jurisdiction upon any state officers or magistrates. The act says it shall be " the duty of any court, judge, justice, or other magistrate," &c. It is therefore obligatory upon the court, officers, and magistrates named in it ; and for disregarding its obligations there must be some means of

In the matter of Bruni.

redress. The United States cannot control or punish the state magistrate. II. Justice Drinker being a state magistrate, and the duty imposed by the act being judicial, he could not exercise it. 1. That the duty imposed was judicial is clear. The magistrate is to examine and decide upon law and fact in a controversy between the French vice consul, on the one hand, and the alleged deserter on the other. ( *United States* v. *Lawrence*, 3 *Dall.* 42.) 2. No portion of the judicial power of the United States can be vested in a state court or magistrate. (17 *John.* 4. *Houston* v. *Moore*, 5 *Wheat.* 1. 7 *Conn.* 244. 1 *Kent's Com.* 396, 404, *2d ed.* 3 *Story's Com.* § 1749 *to* 1754. *Case of Jos. Almeida, decided by Chancellor Bland of Md., reported at length in Niles' W. Reg. Ex parte Pool,* 2 *Virg. Cas.* 276.) III. If, however, Justice Drinker could exercise the jurisdiction, it was of a special and limited kind, and in derogation of common right. It must, therefore, be strictly pursued, and appear to be so on the face of the proceedings. (2 *Wils.* 386. *Mills* v. *Martin*, 19 *John.* 33. *Matter of Sweatman*, 1 *Cowen*, 144. *Bowman* v. *Russ*, 6 *Id.* 234. *Reynolds* v. *Orvis*, 7 *Id.* 269. *Gallatin* v. *Cunningham*, 8 *Id.* 370. *Latham* v. *Edgerton*, 9 *Id.* 227. *Thomas* v. *Robinson*, 3 *Wend.* 268. *Bloom* v. *Burdick*, 1 *Hill* 130. 3 *Id.* 661, 666, *note n.* 7 *Id.* 35, 44.)

IV. The final order and process for the detention of Bruni was, on its face, defective, in the following respects: 1. Because it did not set forth the *facts* necessary to show jurisdiction in the justice. (*King* v. *Inhab. of Wolcott*, 6 *T. R.* 583. *Powers* v. *The People*, 4 *John.* 292. 8 *Conn. Rep.* 482. 10 *Id.* 514.) General averments of *any* proceeding are not sufficient. (*Van Etten* v. *Hunt*, 6 *Hill*, 313, 314. *People* v. *Roeber*, 7 *Id.* 39.) 2. It was issued in the name of the people of this state, and directed to a constable and the keeper of the city prison, two state officers. It should have been issued in the name of the president of the United States, and been directed to the marshal of the United States. 3. It directed the detention of Bruni in the city prison. This is a public prison for confinement of prisoners on criminal charges, and cannot

be used for any purposes except such as is authorized by the laws of this state. The laws of the United States require all prisoners to be detained by their marshals, except so far as the states have conceded the use of their prisons. (*Resolutions of Congress Sept.* 23, 1789, *and March* 3, 1791. *U. S. D. vol.* 1, 96, 225.) This state has conceded the use of the sheriff's prison for confinement of persons on civil process " issued by any court of record" of the United States; and the county prison for the confinement of any person duly committed thereto by any court or officer of the United States, " for any offence against the United States ;" the United States supporting such person during his confinement. (2 *R. S.* 443, § 96. *Id.* 773, § 1.) No authority is given, any where, for the use of the city prison to confine persons under the order of a summary jurisdiction like that exercised in this case. 4. The direction to the keeper is to detain him unconditionally ; whereas the act authorizes a detention only so long as the vice consul defrays the expense of doing so.

To establish the jurisdiction of Justice Drinker, it was necessary, under the French treaty of 1822, and the act of March 2, 1829, to show, 1. That the consul or vice consul of France made application in writing. 2. Stating that Bruni had deserted from a French vessel *while in a port of the United States.* 3. That proof was then made by the ship's register, roll, or other official document, that Bruni was a sailor belonging to the crew of the Philadelphia, at the time of the desertion. 4. That a legal warrant was issued for his arrest, and that he was brought up for examination. He could not be arrested by parol authority, or by a void process. 5. That an examination was had, and upon it the facts stated in the application and ship's register were found to be true, and that thereupon the final order or process was made.

V. If the final order or process were good on its face, the rest of the record shows a fatal defect in the jurisdiction, in every one of the foregoing particulars. 1. The application was not made by the consul or vice consul. The statute must be strictly complied with. These officers were named because their sta-

In the matter of Bruni.

tions and characters were supposed to form a guaranty against an improper application. It was a power vested in them requiring discretion and judgment. Their authority could not be delegated. It was not merely mechanical, but required discretion and judgment; and in such case authority cannot be delegated. (1 *Hill*, 501. 26 *Wend.* 485. *Story on Agency*, 12, 14. 3 *Hill*, 53.) 2. The application did not state that Bruni had deserted *while in a port of the United States.* This was necessary to be stated. (11 *Wend.* 648. 6 *Hill*, 314.) 3. There was no proof, by the exhibition of the ship's register, roll, or other official document, that Bruni was a sailor belonging to the crew. (1) There is no evidence that any document was exhibited at all. Drinker says a paper was exhibited to him which he was " *satisfied from inspection*," was the rôle de equipage. That is scarcely legal evidence of its being the rôle de equipage. (2) But if it were the genuine document, it did not show Bruni to be a sailor, or to belong to the crew. To show both was necessary. The treaty is explicit, " *sailors being part of the crew.*" The act was intended to be co-extensive with the treaty. *Sailor* has a definite technical signification; and means one of the common hands engaged in navigating the vessel. Neither the captain nor mate is included. (7 *Conn. Rep.* 240.) The consular convention, after which this section appears to have been framed, had the words " captain, officers, marines, sailors and all other persons being part of the crews of their respective nations." The present treaty omits all but the sailors, and is confined to them. What did the rôle de equipage in this case show? That Bruni was a *domestic.* That is not a sailor. The question is not whether his service was maritime, so that he could sue in the admiralty for his wages; though that is doubtful; ( *Gilpin's Rep.* 516;) but whether he is a sailor in the sense of the treaty and statute. ( *Curtis on Seamen*, 6.) 4. Bruni was not brought before Drinker on a legal warrant. The warrant issued was illegal, because, (1) It did not set forth the facts necessary to show jurisdiction to grant it. (2) It was issued without oath or affirmation. A warrant cannot properly issue without an oath or

affirmation. (*4th Amend. Const. U. S. Ex parte Burford*, 3 *Cranch*, 448.) (3) It was issued in the name of the state, and to state officers. (*Conk. Tr.* 400.) 5. No examination, within the meaning of the act, was had when Bruni was brought before the justice. This fact appears upon the return of Justice Drinker, and is a good objection in that matter. The examination contemplated by the act is a legal investigation of all the facts involved in the case, and of which some record should be made. (11 *Wend.* 399. 3 *Wils.* 380.)

*E. Sandford & F. R. Tillou*, for the French vice consul. I. The proceeding before Justice Drinker was not of that character which, under the constitution of the United States, it was imperative upon congress to vest in tribunals of its own creation. 1. The state courts may, in the exercise of their ordinary and rightful jurisdiction, take cognizance of cases arising under the constitution, laws, and treaties of the United States. 2. The judiciary act of 1789 shows that, in the opinion of congress, the grant of jurisdiction is not sufficient to vest an exclusive jurisdiction. Unless there be some clause of exclusion in the acts of congress, they are to be regarded as permitting jurisdiction over the subjects therein described, to be exercised by the state courts and magistrates. (1 *Kent*, 398. 17 *John.* 1. 14 *Id.* 95.) II. The writ of certiorari brings up nothing but the record. The only question to be determined upon it is, whether the officer had jurisdiction. The facts cannot be examined into, and if appearing upon the return, cannot be regarded. (25 *Wend.* 157.) 1. The correctness of Justice Drinker's decision cannot, therefore, be enquired into: if by a proper application of the vice consul he once gained jurisdiction, he did not lose jurisdiction by any subsequent erroneous decision. (6 *Wend.* 564.) 2. A re-investigation of the facts and merits cannot be had, unless authorized by statute. The writ to Drinker is a common law certiorari. The justice's decisions are therefore final in all questions of fact, so far as this court is concerned. (2 *Chit. Gen. Pr.* 375. 19 *Wend.* 342.) III. The

return shows that the justice obtained jurisdiction of the subject matter, and of the person.

*As to the subject matter.* 1. The seal of the consulate affixed to the application proved it to be the official act of the consul. No other attestation was necessary. 2. The 4th amendment of the constitution of the United States, relates only to search and criminal warrants, and is not applicable to a case like this. 3. The presence and direction of the consul will be presumed. (21 *Wend.* 178.) 4. If the court can infer that the consul was not present, and that the application was signed by his deputy or clerk without his direction and personal presence, it was a mere ministerial act of the most ordinary character, and could be performed by deputy. (9 *Coke's Rep.* 47, 49. 10 *Paige*, 232, 33. *Sewell's Law of Sheriffs*, 33, 41. 21 *Wend.* 178.) 5. It is evident that the desertion took place in a port of the United States. The application was made at New-York, on the 6th of August, and alleges the desertion on the 3d of the same month. The desertion in that time could not have been in any port out of the United States.

*As to the person of Bruni.* 1. The justice obtained jurisdiction of the person of Bruni. He was brought up on the warrant. Being before the justice, he submitted to an examination, and that gave the justice jurisdiction to determine the principal question. (7 *Cowen*, 271, 2.) 2. Though Bruni was a domestic on board the steamship, he was a " part of the crew" within the meaning of the act of congress. The term *seaman*, in the act, is generic, intended to include all who enter into the maritime contract. The language " part of the crew" is intended to denote the persons who have deserted, and not the sailors who may desert. 3. The treaty does not intend an inquiry before the magistrate into the particular character of the service contracted for, on board. · In respect to this, he is under the control of the master. Although he may have shipped as a domestic, he may have been obliged to toil at the ropes. 4. The exhibition of the roll forms the right of the magistrate to demand if the person be one of the ship's crew, registered as such. If an inquiry is to be had beyond this, the

exhibition of the roll is an idle ceremony.  5. The object declared by the 6th article of the treaty is to " render every necessary assistance."  The voyage may be retarded by the desertion of one person or another.  All are equally bound to perform their contract.  The sovereignty of France is to be maintained in her vessels, and over their crews, whilst in our ports.

IV. Justice Drinker could issue the warrant either to the marshal of the United States or to any constable or officer of this state.  The section of the judiciary act conferring power on state magistrates provides that it may be exercised " agreeably to the mode of process against offenders in such state."  This was done in this case.  (*Conklin's Tr.* 405.)

V. The final order or warrant of commitment shows sufficient on its face.  It refers to the statute under which the justice acted, and adds that the facts stated in the warrant are true.  This is sufficient.

VI. The commitment to the city prison was proper.  The state has conceded the use of the prison for the confinement of any person duly committed thereto for any offence against the United States.  The act of desertion may be deemed an offence against the United States ; inasmuch as it tends to impair the effect of its treaty stipulations.  (*See act of April* 15, 1814 ; *Laws of New-York relating to the city of New-York,* 21.)

HURLBUT, J. delivered the opinion of the court.  This matter comes before us upon two writs of certiorari, the one bringing up the proceedings of Justice Drinker for review ; the other the proceedings before Judge Edwards.  The important question, and perhaps the only one we are called upon to decide, is whether Justice Drinker had any jurisdiction of the subject matter, or of the person of Bruni.  In the first place, does the statute of the United States of March 2, 1829, under which Justice Drinker assumed to act, apply equally to officers of this state and of the United States, or to those of the United States solely ?  In our judgment the act cannot be held to devolve any power upon the officers of the states, unless they are in express terms included in its provisions.  The expression of the

statute, " any court, judge, justice or other magistrate having competent power to issue a warrant," can be fully answered only by the courts and officers of the United States. Indeed, the United States, in passing a statute devolving upon any officers particular powers and duties, must, in the absence of any expressions to the contrary, be considered as referring to their own officers alone.

We are unanimously of opinion it was never intended by congress, in the present statute, to confer power upon any but courts and officers of the United States; and that no court, judge, justice, or other magistrate of this state can assume to execute its requirements.(a) The statute says " *it shall be the duty of any court*," &c. It is mandatory on the officer or court, and if they neglect or refuse to perform the duty, it is to be supposed they can be made amenable for such neglect or refusal: and yet no power exists in the general government to arraign a state officer in a matter like this. When congress designs to delegate duties and powers to officers of the United States, the expression here used is proper : when it intends to include state officers the language is, " It shall and may be lawful," &c. Thus in the naturalization act it says " it shall and may be lawful" for any court of record to entertain the proceedings, &c.

We hold therefore that this act of congress confers power only upon courts and officers of the United States: and as in every part of the country where a case of this kind can arise there are United States officers, neither public policy nor the meaning of the statute require that the power should be exercised by the officers and courts of this state.

But if the court had any doubt on this subject, which it has

(a) In the case of *The British Prisoners*, (1 *Wood. & Minot's Rep.* 66,) in the circuit court of the United States for the first circuit, it was decided that under the treaty with *Great Britain*, of August, 1842, prisoners charged with piracy, committed contrary to acts of parliament, and on board a British vessel, may be arrested here, and examined; and if believed to be guilty, they may be ordered into custody with a view to a future surrender. And that this may be done by a state magistrate; though he is not compellable to do it, by the United States.

not, there is another ground fatal to the proceedings below. Admitting that Justice Drinker was an officer such as was intended by the act of congress, we find on looking at the records returned, it is no where alleged that Bruni deserted from the French steamship *while in a port of the United States.* Without this appearing, Justice Drinker obtained no jurisdiction, even if he had a right to act in any case, under the statute. This defect itself, apart from any other considerations, nullifies all the proceedings of Justice Drinker. For these reasons, without considering the many other questions which were so ably discussed by counsel, it appears to us that the proceedings of Justice Drinker ought to be set aside. And in the case of the certiorari to Judge Edwards, the order of that officer must be reversed and Paul Bruni be discharged.

Ordered accordingly.

NEW-YORK SPECIAL TERM, October, 1847.
*Edmonds,* Justice.