## SUPREME COURT.

RACHEL S. LANSING, appellant agt. DOUW F. LANSING, Executor of the last will and testament of PETER LEVERSEE, deceased, and JANE ANN LANSING, respondents.

The testator by his will directed his executor, at the expiration of four years after his decease, to invest out of his estate, upon safe and sufficient real estate securities, at the legal rate of interest, the sum of $3,000, and to keep the same invested for the benefit of his grand daughter, Rachel S. Lansing, until she shall attain the age of twenty-one years, or until her death, applying the interest that might be received from said investment, or so much thereof as might be necessary toward the support and education of said Rachel, and when she shall attain the age of twenty-one years his executor is to pay her the sum of $3,000, with the accrued and accumulated interest, except so far as the use thereof has been necessary as aforesaid, and by said executor deemed proper for the education and support of said Rachel; and subject to the like necessity his executor is directed to reinvest safe'y and securely the interest he may receive during such investment, for the like benefit of said Rachel.  After some other bequests the residue and remainder of the estate is disposed of, subject to the previous payment of the legacies and investments by the executor :

*Held,* 1st. On a final accounting of the executor before the surrogate, that the fund in the hands of the executor for the benefit of Rachel S. Lansing was held

' by him in his charater as an *executor*, and not as trustee, and he was entitled to a *commission of one per cent.* upon the interest or increase of the fund, instead of five per cent. as erroneously allowed by the surrogate :

*Held*, 2*d*. That this fund being set apart, and the income given without any particular amount being specified, was chargeable with the *commission and taxes*—they were not payable out of the general estate :

*Held*, 3*d*. That although the executor, personally, worked out the *highway taxes*, they were nevertheless properly chargeable upon the fund :

*Held*, 4*th*. That the surrogate properly excused the executor from any personal liability in not keeping the interest upon the interest reinvested fully, where he stated in his account, filed " that he had tried to keep the fund together, with the accrued and accumulated interest, invested and reinvested as required by the will, and that he·had not been able to do any better than is stated in the account ;" it not being claimed that the executor used the funds in his own business, in trade, or that he made any particular profit from their use, nor was there anything to establish that he was guilty of any gross delinquency or violation of duty :

*Held*, 5*th*. That the ·executor was excused in depositing the funds in a *savings bank*, at an interest of five per cent. semi-annually, where they had been paid into his hands upon a bond 'and mortgage upon real estate, which had become due, where he showed that it was very difficult at that time to loan money on good real estate securities ; and especially as he put it in an institution where the rate of interest was quite as large as it would have been if deposited in the New York Life and Trust Company, where such investments are sanctioned by the courts :

*Held*, 6*th*. That the surrogate erred in directing the payment of the sum due to the plaintiff with interest at *five per cent.* There was no good reason why the amount should not draw interest at the usual legal rate from the time of the decree.

*Albany General Term, September,* 1865.

*Before* HOGEBOOM, MILLER *and* INGALLS, *Justices.*

APPEAL from decree of surrogate, on June 23d, 1849. Peter Leversee made his last will and testament, and died July 10, 1839. By the will the testator directed his executors, at the expiration of four years after his decease, to invest out of his estate, upon safe and sufficient real estate securities, at the legal rate of interest, the sum of $3,000, and to. keep the same invested for the benefit of his grand-daughter, Rachel S. Lansing, until she shall attain the age of twenty-one years, or until her death, applying the interest that might be received from said investment, or so much· thereof as might be necessary toward the support and education of said Rachel ; and when she shall attain the age of twenty-one years, his executors are to pay her the sum of $3,000, with the accrued or accumulated interest, except

so far as the use thereof has been necessary as aforesaid, and by said executors deemed proper for the education and support of said Rachel; and, subject to the like necessity, his executors are directed to reinvest, safely and securely, the interest they may receive during such investment, for the like benefit of said Rachel. A similar provision is made for the benefit of Sarah Maria Witbeck. The testator bequeaths specific legacies to Peter L. Witbeck, Sarah Maria Witbeck, his granddaughter, Helena Lansing, and to his grandsons, Isaac N. and Peter Leversee Lansing.

The testator also directs the payment of the sum of $100 annually, for the period of four years, to his daughter, Jane Ann.

The testator then devises to his daughter, Jane Ann, his farm in Watervliet, consisting of about one hundred and twenty acres, and also devises to Peter L. Witbeck one hundred and twenty acres; he also made the following devise : " All the rest and residue of my estate, real and personal, whereof I may die, seized or possessed, I hereby give, devise andb equeath (subject to the previous payment of the aforesaid legacies, and the investments aforesaid by my executors) unto my said daughter, Jane Ann, who is not, however, entitled to the possession of said rest and residue of my estate, or the rents, issues and profits accruing therefrom, until four years after my decease."

Rachel having arrived at the age of twenty-one years, an accounting was had before the surrogate of Albany county, all the parties interested were cited to appear including the residuary legatee.

The respondent, on his final accounting, claimed there was due Rachel $5,447.26, and the surrogate decided there was due Rachel $5,641.26, to wit, principal, $3,000; increase $3,093.26; taxes paid by respondent, $297.44; and as respondent's commissions on the gross increase of the legacy, $154.56.

Rachel S. Lansing, from this decree of the surrogate, appeals to this court.

The executor's account, filed with the surrogate, showed

an investment of the sum of $3,000, the amount of the legacy upon bond and mortgage, on the 10th day of July, 1853, at seven per cent. per annum, and an allowance of interest, and the interest upon the annual interest received up to the time of the accounting, with a deduction of taxes, highway taxes, and commissions at five per cent. upon the amounts received. It also showed that on the 29th day of October, 1862, the mortgage was paid up, and the executor not being able to reinvest upon real estate security, he deposited the same with a savings bank at five per cent. interest, compounded every six months, which interest with interest upon the same was credited on this account. Objections were made, that the charges for taxes and commissions were not proper items of charge against the legacy or its increase, to the charges of commissions at five per cent., to the deposit of the moneys in the savings bank at an interest of five per cent., to the charges for highway taxes, upon the ground that they had been retained by the executor as a compensation for his own services, he having performed the work himself. It was also claimed that the interest should be compounded from year to year.

A decree was made on the 15th of February, 1865, confirming the account, and bringing it down to December 23d, 1864, and directing payment to the appellant of $5,641.26, with interest at five per cent. from that time.

Objection is made to the allowance of five per cent. instead of seven per cent. upon this amount.

A. LANSING, *for appellant.*

IRA SHAFER, *for respondents.*

*By the court,* MILLER, J. Several objections are made to the decree of the surrogate, which I will proceed to consider.

It is said that the surrogate erred in charging the appellant with commissions, taxes and expenses.

By the will of the testator the executors were to make the investment of the legacy bequeathed to Rachel S.

Lansing, and to keep the same invested until she arrived at the age of twenty-one years, or until her death. The executors were to apply the interest, or so much as they deemed proper, toward her support and education, and upon her arriving at the age of twenty-one years, they were to pay her the legacy and the accumulated interest, except so far as the use thereof was necessary and deemed proper by said executors for the education and support of said Rachel.

The rest, residue and remainder of the estate is also disposed of, subject to the previous payment of the legacies and investments by the executors.

It is very evident from the will that there was no trust created in the hands of the executors, distinct and separate from their duties as such. The testator does not name them as trustees, and manifests no intention that they should act otherwise than as executors, with instruction to perform certain duties by virtue of their powers as executors. Without proper words to establish a trust it cannot be inferred. The fund in the hands of the executor for the benefit of Rachel S. Lansing was held by him in his character as an executor, and the trust created thereby was a part and portion of the duties imposed upon him as an executor and not distinctly and separately as a trustee. (See *Drake* agt. *Price*, 1 *Seld.* 430; *Valentine* agt. *Valentine*, 2 *Barb. Ch. R.* 430, 438 *and* 439; *Westerfield* agt. *Westerfield*, 1 *Barb.* 198.)

Acting then as executor and not as trustee in the investment and management of the legacy the executor was entitled to a commission of one per cent upon the interest or increase of the fund instead of five per cent. which was erroneously allowed him. This increase was not a separate and distinct receipt of money independent of what had been previously received, but merely an addition to the principal fund of the estate. This is expressly held in 1 *Seld.* 230 *and* 432 *Barb. Ch. R.*, before cited, and is well settled law. By statute the executor is only entitled to one per cent. for receiving and paying out sums over $10,000 (*S. L. of* 1863, 608, § 8), and

the estate here showed assets to the amount of fifteen thousand dollars.

The suggestion that the executor was entitled to full commissions upon the principle of annual rests, has no application to a case like this 1 *Seld.* 430, was similar in most of its leading features to the present case, and that disposes of the question the other way.

Whether this commission should be taken out of the fund itself or with the taxes and expenses be deducted from and chargeable on the general estate is another and different question, which must be determined by looking at the provisions of the will and ascertaining, so far as possible, what the testator really intended.

It appears that the legatee was to receive the legacy upon attaining her majority, and such interest as remained after paying for her support and education.

The amount was specific, and it was subject to this deduction alone, without any reference to commissions and taxes, and hence it is claimed that it cannot be complied with by the payment of anything less. It is true this is the only exception made, but it must be taken into consideration that this amount was specially set apart by itself as a fund for the benefit of the legatee, and as such it had a distinctive character. It was taken out of the estate for a specific purpose, and the legatee was to enjoy the interest, so far as it might be necessary, until she became of age.

It is quite possible that the residue of the estate may have been distributed before the time arrived when the legacy was due. Had such been the case, would the exector have been authorized to have retained any uncertain amount in his hands to meet the taxes and expenses?

This would scarcely have been considered as within the meaning and intention of the testator. He evidently meant to set apart this amount as a specific sum, the increase of which should be appropriated for the support and maintenance of his grandchild, and whatever remained to be reinvested, and principal and interest paid over at the proper time, and did not contemplate a resort to the estate generally to keep down

the taxes and commissions. Where a fund is thus situated, and the party only entitled to the income, the authorities would appear to hold that it was subject to taxes and commissions. In 1 *Seld.*, 430, before cited, where the facts bear a striking similarity to the present case, it was conceded that a commission of only one per cent. was chargeable against the fund set apart.

In *Pinckney* agt. *Pinckney* (1 *Bradf.* 269), a testator gave to his wife the use and income of his real estate and the interest of a specified sum, and it was held, that the taxes and expenses were chargeable upon the fund and not upon the estate generally. The court say : " The bequest should bear its own burden ; if the testator had intended these charges to be paid out of the general fund, he would have said so ; and there is no presumption of law in favor of the doctrine contended for. The widow is not to be paid a certain fixed sum annually, nor are the executors to invest such an amount as will produce a clear net income, but she is to receive the income of a particular specified property and the interest of an investment of some thousand dollars, and the rest of the estate cannot be taxed so that she can obtain the gross instead of the net income."

Much of the reasoning here employed is applicable to the present case. The interest was to be paid as provided for certain purposes and at a specified period the principal. No provision is made that any charges upon the fund should be paid out of the general estate, and why should not the legacy be chargeable with these expenses?

In *Lawrence* agt. *Holden* (3 *Bradf.* 142), where a testator gave his wife by his will the use of a dwelling house for life, free and clear of all incumbrances, and in case she requested it, directed the property to be sold and the proceeds invested, and the interest, income and dividends applied to her use, it was held that the executors were not bound to pay the current taxes and assessments out of the testators general estate.

In *Booth* agt. *Ammerman* (4 *Bradf.* 129), the testator gave to his sister the interest upon fifteen hundred dollars, in

case she should become a widow, during her widowhood payable annually, and it was held that taxes and commissions were chargeable upon the trust fund. The court say : " The taxes which the executors may be compelled to pay, and also the commissions on the interest payable annually to the legatee must come out of the interest, and are not chargeable upon the general estate."·

The effect of the authorities cited clearly is, that a fund thus set apart when the income is given without any particular amount being specified is chargeable with commissions and taxes.

The objection made to the allowance for highway taxes is founded upon the ground that the executor, personally, worked out the taxes. The commissions for moneys received and paid out are in lieu of all personal services of the executor or administrator, and he will not be allowed any further compensation for his trouble or loss (*D. Sur.* 496).

Is the charge made in violation of this rule ? We must assume that the road taxes were imposed upon the fund and that the executor was liable and bound to pay them. Instead of paying the money or licensing a person to do the work he performed the service personally.

He paid it in that way. The amount was fixed and settled and the estate legally obliged to pay it. It could make no difference whether paid in that way or by money. It is the same thing as if he had paid the money. He paid it by work instead of money, and it presents a case entirely different from one where services for which no compensation is fixed, are rendered for the benefit of an estate, and a charge made for such services. There an opportunity is furnished to make out charges and audit them, while here the estate must pay a certain sum. I think that a rendition of the service must be considered as a liquidation and payment of the tax for which the executor should be allowed.

It is said that the surrogate erred in excusing the executor from an investment of the interest upon the

interest annually. The will required that the interest should be invested, and if it had been made to appear in any way that the executor has neglected to perform the duty enjoined upon him in this respect, and that the fund has suffered by reason of it, or that more could have been realized than was done, then he should be held liable for compound interest. In his account, filed with the surrogate, he states, "that he has tried to keep the fund, together with the accrued and accumulated interest, invested and reinvested as required by the will, and that he has not been able to do any better than is stated in the account." This account is rendered under oath and *prima facie* must be considered as mainly correct until assailed or impugned. It presents the fact, however, from which some adequate judgment may be formed, as to the propriety of his conduct in the disposition of the fund. Now it is somewhat manifest that it would not be a very easy matter at the expiration of each year, to reinvest the precise amount of compound interest received, so as to keep the fund in the process of constant accumulation, and hence to charge him with a strict accountability might inflict severe and unnecessary hardship.

The most which could be done under such circumstances would be to fix a certain amount which had accumulated, and charge interest upon that sum. This also would be a difficult matter to carry out practically, and in the absence of any evidence to contradict or dispute the statement of the executor to the effect that he has done the best he could, it would be unjust to charge him with compound interest annually. If there was any evidence to prove that the excuse offered was not a valid one, or any aspect of the case which indicated neglect, misconduct, or a want of good faith, there would be the strongest reason for holding him to the most rigid accountability. Those intrusted with the charge of trust funds under no circumstances should be permitted to use them for their own profit and pecuniary advantage, and whenever they thus violate their obligations the courts should see that they account strictly for their misconduct. They should require at their hands the

greatest diligence and fidelity. An executor, administrator or trustee is not allowed to make any gain, profit or advantage from the use of the trust funds. If he negligently suffer the trust moneys to lie idle he is chargeable with simple interest.

If he convert the trust moneys to his own use and employ them in his business or trade he is chargeable with *compound interest* (*Scheifflien* agt. *Stewart*, 1 *Johns. Ch. R.* 620).

In *Ackerman* agt. *Emott*, (4 *Barb.* 626), STRONG, J., lays down the rule that compound interest is only allowed in cases of gross delinquency or of an intentional violation of duty. (*See also Utica Insurance Company* agt. *Lynch*, 11 *Pa.* 520; *Garness* agt. *Gardner*, 1 *Ed. Ch. R.* 128; *Willard's Eq. Juris.* 614; 2 *Kent. Com.* 230, 231; *B. & T. Law of Trusts*, &c. 594, 595.)

If we apply these principles to the case at bar, I think a case is not made out within the rule laid down. It is not claimed that the executor used the funds in his own business, in trade, or that he made any particular profit from their use, nor is there anything to establish that he was guilty of any gross delinquency or violation of duty. In fact, he presents a statement which if it can be relied upon will exonerate him from any charge of willful omission of duty or misfeasance.

While trustees are held to great strictness in the management of trust funds, the court will deal leniently with them, when it appears they have acted in good faith, and if no improper motive can be attributed to the trustee the court will excuse the apparent breach of trust, unless the negligence is very gross. (*See T. & B. Law of Trusts and Trustees* 599, *and authorities there cited.*)

As this case does not present features which indicate a departure from any settled rule of law, or bad faith on the part of the executor, I think that the objection is not available.

It is further urged that the surrogate erred in excusing the executor's deposit of funds in the savings bank at an interest of five per cent. payable semi-annually.

By the will the executor ·was required to invest in real estate securities. It is not denied that it was difficult at the time when the money was paid into his hands to find securities of this character.

Where special directions are given they should be pursued if possible. If they cannot be followed then the executor should look out for such other securities as the court is known to have adopted and when ·it has authorized and sanctioned any particular fund as a safe investment, he would be justified in making the investment there.

In *Ackerman* agt. *Emott*, (4 *Barb.* 626), it was held that under the general power to make· investments, the court would sanction any investment by executors and trustees in loans on real security, or in public stocks of the state or of the United States, or in the loans of the New York Life and Trust Company. It was said in this case that the law regarded the *certainty* of an income more than its *magnitude*. PARKER, V. C., who originally heard the case, and from whose decision an appeal was taken, remarks: "The court approves of a deposit in the New York Life and Trust Company until a safe investment can be made on bond and mortgage." The executor here being unable to invest upon real estate security was bound to dispose of the fund in the best manner which was practicable under the circumstances existing. He would have been justified in depositing it with the New York Life and Trust Company; and in placing it elsewhere than in such securities as were sanctioned by the court, he incurred the hazard of being made responsible in case of any loss. He put it in an institution where the rate of interest was quite as large as it would have been if deposited in the New York Life and Trust Company. It would have brought a larger income if invested in government securities, but as it turned out it would have been no safer than where it was.

It appears that the executor exercised a sound discretion in thus disposing of it, and as he has acted honestly, and as it does not appear that he could in any other way have disposed of the money so as to have it in his power to

invest it in real estate securities, and as no such securities were offered, I think he was justified in the course which he pursued. He might, it is true, have made an application to the court for instructions, but he was under no obligations to incur such an expense and was not bound to do so.

A trustee or executor is required in making investments to conduct himself faithfully, and to exercise a sound discretion, and when he observes that prudence and intelligence which is demanded of a man in the management of his own affairs, not in reference to large gains, but the safety of the principal and its probable income, he should be sustained.

I think the surrogate erred in directing the payment of the sum due to the appellant with interest at five per cent. There is no good reason why the amount should not draw interest at the usual legal rate from the time of the decree, and in this respect his decree should be corrected.

With the views I have expressed it is not important to examine some other questions raised upon the argument.

The proceedings must be remitted to the surrogate, with directions to correct the decree in the particular named, with costs of appeal against the estate of the testator.