MARY N. JOHNSON, as Executrix, etc., Respondent, *v.* JOHN I. LAWRENCE et al., as surviving Trustees, etc., Appellants.

Where, by the terms or true construction of a will, the two functions of executor and trustee co-exist, and run from the death of the testator to the final discharge, inseparable and blended together, double commissions or compensation in both capacities may not be allowed.

*It seems* that to entitle the same person to commissions, both as executor and trustee, the will must provide by express terms or by fair intendment for the separation of the two functions, the duties of the one to be substantially performed before those of the other begin, and the duties of trustee must have been actually entered upon and performance begun either by real severance of the trust fund from the general assets or by a judicial decree, which wholly discharges the executor and leaves him acting and liable only as trustee.

The will of G. directed his executors, "their survivors or successors," to carry on the testator's business with his "estate and property" during

the life of his wife and his daughter F.; the profits, beyond certain sums set apart for their support, to be added to the "working capital," and upon their death the business to be closed and the estate divided. Some portion of the estate being realty, power of sale was given to the executors, who were also made guardians of the estates of the infants during their minority. In an action by the executrix of one of the executors, who had himself received commissions, as executor, upon the whole estate, to recover commissions as trustee, *held* that under the will the duties of executor and trustee were inseparably blended; and that plaintiff was not entitled to recover.

*Hurlburt* v. *Durant* (88 N. Y. 121), distinguished.

Upon an accounting by the executors the surrogate's decree, after deducting their commissions from the amount of assets found in their hands, which were substantially in the same condition as when received, directed them to retain as executors $50,000 "to meet debts," and directed that the balance be retained by them "as trustees," and the decree ordered their discharge as executors "except as * * * stated and directed." Subsequently another accounting was had, wherein it was adjudged that there was due them for disbursements over and above the $50,000 retained, and all property which had since come into their hands as executors, the sum of $183,582.20, which, with commissions and the expenses of accounting, etc., they were directed as trustees to pay. No settlement of the business was had, but the same was continued. *Held,* that the decrees did not, and the surrogate had no power to, discharge the executors as such and make them trustees simply; that the attempted change of capacity was purely constructive, not warranted by the will and inconsistent with the real action taken.

(Argued January 30, 1884; decided February 26, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 10, 1883, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, as executrix of the will of Samuel W. Johnson, deceased, against defendants, the surviving executors of the will of William T. Garner, deceased, and against the beneficiaries under said will, to recover one-half the statutory commissions claimed to be due to said Johnson at the time of his death as one of the trustees under said will for receiving the estate as trustee.

The will, after providing for the payments of debts, contained these provisions.

"*Second.*—I direct that my executors hereinafter named, or such of those named as shall qualify as such, their survivors or successors, shall prosecute and carry on with my estate and property my present business under the firm name of Garner & Co., for and during the life-time of my wife Mary Marcellite, and my daughter Florence, and the survivors of them, and that all profits and gains arising from said business shall, after the sum set apart for the support of my wife and children, as hereinafter provided, are deducted, be added to and form a part of the working capital of my estate.

*Third.*—From out the income and profits of my said estate, my executors will pay my beloved wife, Mary Marcellite, during her life, the sum of seventy thousand dollars, net, per annum.

*Fourth.*—From out of the surplus income of my estate my executors will support, educate and maintain my child or children surviving me, and such as may be born alive of my said wife within nine months after my decease, until they severally attain the age of twenty-five years, up to which age such executors may advance any child or children such moderate sum or sums of money as, in their best judgment, will benefit or promote the happiness or comfort of such child or children, such advances to be charged against them. As each child attains the age of twenty-five years, said executors shall pay over to such child or children the full proportionate sum per annum to which she or he may be entitled from out of the profits of said business, after my wife's amount is paid her, with expenses thereof, and my executors will so apportion and divide such income and profits that my sons shall receive twice the sum per annum that my daughters receive.

In case of the death of any child or children of mine, leaving lawful issue surviving, then the parent's share shall be paid to such issue, if of age, or used for their education, support and maintenance (or so much thereof as may be necessary)

by my executors, until such issue attains full age of twenty-one years, when such income shall be paid them in full.

Upon the death of my said wife and my daughter Florence, the said business shall be closed and my entire estate settled and divided among my children or their descendants, if any have died leaving children, *per stirpes.*

*Fifth.*—I appoint as the executors of this, my will, Samuel W. Johnson, John I. Lawrence, James F. Thorn and William E. Thorn, and authorize them, or the survivor, to sell and convey all or any part of my real estate left by me as they may deem advisable, and to give good and valid deeds therefor, with full powers to change securities and investments as they deem best.

My said executors and my said wife shall be the guardians of the persons, and my said executors shall be guardians of the estates of my children during their minority."

The testator and his wife both died in 1876, his will was admitted to probate and letters issued to the executors named. On February 25, 1878, they rendered an account up to January 1, 1878.

On April 17, 1878, a decree was made by the surrogate of New York, on such accounting, by which the condition of the estate was found as follows:

" Property in hands of executors and trustees $7,576,131 95
To be paid and deducted therefrom commissions
   of executors, to each $78,162.66. $234,487 98
Expenses and payments......... 25,597 75
To be retained by executors to
   meet debts ............... 50,000 00
                                ————— 310, 085 73

   Balance ........................... $7,266,046 22"

The decree, provided and directed " that the balance of the money and property of said estate, in the hands of said executors, as above stated, established and adjusted, after making the payments and deductions hereinbefore directed to be made,

be held and retained by said executors, as trustees, under and by virtue of the provisions of the last will and testament of said William T. Garner, deceased, for the uses and purposes and trusts imposed upon said Samuel W. Johnson, John I. Lawrence and William E. Thorn, or the survivors or survivor of them by the provisions of said last will and testament, and that said executors be and they hereby are discharged of and from all other accountability and responsibility except as hereinbefore stated and directed."

On November 23, 1880, the said executors, etc., rendered a second account of their proceedings, down to October, 1880, and on February 4, 1881, a decree was entered, in and by which it was ordered and adjudged that there was due them over and above the $50,000 retained under the provisions of the decree on the first accounting, and over and above all property which had come into their hands since the first account was rendered, the sum of.............. $183, 582 23
There was allowed to each executor, as commissions, $2, 569.87.
Making in all the sum of ........ $7, 709 61
Expenses and disbursements. ..... 1, 733 25
                                   ————— 9, 442 86
                                          ——————————
                                          $193, 025 09

The decree on this second accounting then directed that said sum of $193,025.09 be by said trustees paid to said executors out of the estate.

On December 13, 1881, Samuel W. Johnson died; he, in in his life-time, and plaintiff as his executrix since his death, together have received as commissions on the income or profits of the estate of William T. Garner, deceased, down to December 31, 1881, $10,610.59.

Further facts appear in the opinion.

*Homer A. Nelson* for appellants. The direction under the will to carry on the business of Garner & Co. is by means of a power in trust annexed to the executorship, and this trust and

the executorship are inseparable. (*Hall* v. *Hall*, 78 N. Y. 535, 536; *Drake* v. *Priee*, 5 id. 430; *Crane* v. *Crane*, 2 Redf. 244; *In re Pike*, id. 255; *Ward* v. *Ford*, 4 id. 34; *In re Carman*, 3 id. 46.) Commissions are allowed on securities transferred as permanent securities for the benefit of remaindermen, but not on property inventoried, but not actually sold, where a sale would be necessary. (*Cairns* v. *Chaubert*, 9 Paige, 160.) Commissions are not allowed on the transfer of stock specifically bequeathed. (*Schenck* v. *Dart*, 22 N. Y. 420.)

*N. Pendleton Schenck* for respondent. The fact that the will does not contain the words "trust," or "trustee," is immaterial. (*Phœnix* v. *Phœnix*, 28 Hun, 629.) In the case of personal estate the title vests directly in the executors, and as to it they are trustees and can be called to account in a court of equity. (*Wager* v. *Wager*, 89 N. Y. 161.) Nor does the fact that the testator directed his executors to carry on his business of Garner & Co. during the two specified lives, negative any theory of a trust being created in the executors. Such a duty on the part of an executor is wholly outside of the duty of an executor as such. (*Lent* v. *Howard*, 89 N. Y. 179; *Layton* v. *Davidson*, 29 Hun, 622.) The court having found that the accounts of the executors have been passed and allowed, and they discharged as such, and they having been directed by the decree of the surrogate to retain, and having retained the balance in their hands, as trustees under the will, and these findings having been approved by the General Term are not open to inquiry in this court. (*Hall* v. *Hall*, 78 N. Y. 539; *Hurlbut* v. *Durand*, 88 id. 121; *Matter of Roosevelt*, 5 Redf. 601; *Phœnix* v. *Phœnix*, 28 Hun, 629; *Layton* v. *Davidson*, 29 id. 622.)

FINCH, J. Double commissions have been awarded in this case for services purely constructive, and having no real existence. That the same person may be entitled to compensation as executor, and also as trustee, in respect to the same estate,

or some part thereof, is undoubtedly true, but does not follow in every instance where trust duties are imposed upon an executor. Where, by the terms or true construction of the will, the two functions with their corresponding duties co-exist, and run from the death of the testator to the final discharge; interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function should end and the other begin, double commissions or compensation in both capacities cannot be properly allowed. Substantially this was said in *Hurlburt* v. *Durant* (88 N. Y. 121) although it was not then attempted to decide the precise question, and the doctrine asserted is fairly deducible from the adjudged cases. In *Valentine* v. *Valentine* (2 Barb. Ch. 430) the estate consisted both of real and personal property, the former of which the executors were authorized to sell. After some general legacies, the testator directed the residue to be divided between his three sons, but one of them being a lunatic, his share was ordered to be invested, the income being made applicable to his support during life, and at his death the principal being made payable to his children in equal shares. The learned chancellor decided that the funds in the hands of the executors for the benefit of the lunatic and his children were held by them in their character of executors, and the trust and the executorship were inseparable. And the court added, that " the case would have been different if the executors had been directed by the will to pay over this part of the fund to one of their number as a trustee, upon a separate and distinct trust." Double commissions were, therefore, denied. The decision was founded upon the doctrine that the trust and the executorship were inseparable under the terms of the will, and the double functions and double duties were blended and co-existed to the end. The case establishes the rule, although it may not be beyond criticism as applied to the facts before the court. *Drake* v. *Price* (5 N. Y. 430) was a similar case of a trust to secure income to a daughter for life, with remainder payable to her lawful heirs; and the precedent set by the

Chancellor was followed and double commissions denied. PAIGE, J., however dissented, and sought to distinguish the case from *Valentine* v. *Valentine* by the observation that in that case the trust had not been assumed by the executors "by an *investment* of the trust moneys, and the *consequent* separation" of the trust fund from the general funds of the estate. The ground of dissent conceded the doctrine of the principal case, but went upon the theory that the trust and executorship were separable by the terms of the will, and that such separation had actually, and in truth, been made. And it is this view of the dissenting opinion which won our concurrence in *Hurlburt* v. *Durant*. The two earlier cases referred to were cited with apparent approval in *Hall* v. *Hall* (78 N. Y. 539) and the difference between them drawn by the dissenting opinion of PAIGE, J., noted. That case further cited *Lansing* v. *Lansing* (45 Barb. 182) and *Mann* v. *Lawrence* (3 Bradf. 424), in both of which there were special trusts, but not separated from the bulk of the estate by an actual investment of specific trust funds for the sole use of the beneficiaries. The facts in *Hall* v. *Hall* showed that the testator denominated his executors, in different parts of the will trustees, and that circumstance was relied upon; but this court said that the words were used interchangeably and as synonymous, and that the bequest of the fund to the executors, and their survivors and successors, indicated rather a trust attached to the office, than imposed upon the individuals. The executors had an accounting in 1874, on which they were allowed full commissions as executors. Four years later, one of the legatees, to whom income had been paid during her minority, having come of age, a final accounting was had. The executors claimed commissions as trustees on her share, although that had never been in fact separated from the general fund in their hands, but the claim was disallowed; the chief judge saying, "There seems to be neither authority nor reason for holding that there has been any such separation of the fund, or paying over to the appellants as trustees, or any holding by them as such, as to entitle them to the extra com-

pensation denied by the surrogate." In the course of the opinion other cases cited by the appellant were referred to. In one of them (*Matter of Carman*, 3 Redf. 47) there had been an accounting, and the surrogate had ordered a specific sum to be set apart and held for a beneficiary under the will, which the trustees did, opening a separate account, and taking out that specific fund from the general assets held by them as executors; and in another case it was said a final decree had discharged the executors as such and they had retained the fund as trustees as directed. *Ward* v. *Ford* (4 Redf. 45) is an example of such a case, and the surrogate there held that the will clearly created a trust in the hands of the executors, distinct and separate from their duties as such.

Taking the adjudged cases together, they appear to establish that, to entitle the same persons to commissions as executors and as trustees, the will must provide, either by express terms or by fair intendment, for the separation of the two functions and duties, one duty to precede the other and to be performed before the latter is begun, or substantially so performed; and must not provide for the co-existence, continuously and from the beginning, of the two functions and duties; and that where the will does so provide for the separate and successive duties, that of trustee must be actually entered upon and its performance begun, either by a real severance of the trust fund from the general assets, or a judicial decree which wholly discharges the executor and leaves him acting and liable only as trustee.

An examination of the will in the present case satisfies us that the trust duties, and those of the executors, co-existed from the issue of letters testamentary down to the present action, and that no separation of such duties at any point of time was contemplated by the testator, except in one emergency, which has not yet arisen. The first clause of the will, in a very short sentence, directs the payment of debts. The second clause then proceeds to require the executors, or such of them as should qualify, "their survivors or successors," to

carry on with testator's "estate and property" his present
business, under the firm name of Garner & Co., during the
life of his wife and his daughter Florence, and that the profits
beyond the sums set apart for their support should be added
to the "working capital" of his estate. After fixing the
annual sums to be paid out of income, the testator directed
that, upon the death of his wife and daughter, the business
should be closed, and the estate divided among his children.
As some part of it consisted of real property, he gave to his
executors a power of sale, and in the last clause of his will
made them guardians of the estates of his children during
their minority. It is apparent that from the very beginning
the duties of the executors were blended inseparably with the
trust duties, and were so intended to remain. There could be
no trust fund as a separate and distinct entity from the gen-
eral body of the estate until the final division. There was no
point of time, prior to that division, at which it could be said
that one function ended and the other began. On the contrary,
the ordinary duty of an executor to turn the estate into money
was suspended at the outset, and in its room was put the duty
of carrying on the business with all the assets on hand. That
duty began at once. As a trust duty it sprang into life at the
same instant with the executorship, and inextricably blended
with it. It existed only by force of the official character, and
could not stand without it. The business to be conducted by
the executors was at once conducted as executors, and became
an additional duty imposed upon them as such. The two
functions were made one; were interwoven at the beginning
and exercised together; and no moment was indicated by the
frame of the will when one should end and the other begin.
To make a division at the death of Florence was a clear duty
put upon the executors. To enable them to effect that purpose
they were empowered as execut rs to sell the real estate and
close up the business. Until th n the duties, blended at the
beginning, were to remain unite l, and the trust was not sepa-
rate and distinct, but characteri ed and modified the duty of
the executors. The only separa ion contemplated by the will

was indicated by the provision making the executors guardians of the property of the children. The wife is already dead. If now Florence should die the business would close and the division be made. But at that moment the remaining children may be minors. The shares of each will then be payable by the surviving executors to themselves as testamentary guardians, and the executors as such can be wholly discharged with all their duties ended. The existence of that possible emergency indicates the only separation of duties present in the intention of the testator, and shows how great a wrong it would be to take from this estate as commissions more than $700,000 by compensating the same persons in the threefold capacity of executors, trustees, and guardians. As in the case of *Hall* v. *Hall*, the trust duty is imposed upon the executors, their survivors or successors. As in that case, a power of sale, not yet exercised, was given to the executors to dispose of the real estate preparatory to distribution. But stronger than in that case is the conviction, which this will carries, of an intention not to impose trust duties as separate and distinct from the functions of the executors. Suppose Johnson had not died, but at that date had been removed from his office as executor. Could we have then said that he remained trustee and might continue to manage the business and make the final distribution notwithstanding such removal? Has any point of time arrived at which, within the provisions of the will, and in the contemplation of the testator, it has become the duty of the executors to pay over to themselves as trustees the funds of this estate? The answer to these questions is not difficult, and requires us to deny the right to the double commissions claimed.

But it is said, the surrogate by judicial decree has discharged the executors and made them trustees. He did not so discharge them, and could not foreclose by an opinion as to the future functions of the executors the question not before him, which is now before us. What he did, contradicts what he said, and shows how impossible it proved to be to separate duties which in their nature under the will were inseparable. On the first accounting of the executors a balance of

assets was ascertained by estimating in gross at over five millions the business value of the firm of Garner and Co. No settlement of that business conducted by the executors was in any manner had: the executors' account was brought down only to the previous first of January: and to meet obligations of the estate they were told to retain $50,000 and hold the balance as trustees. This attempted change of capacity at that moment was purely constructive; not warranted by the will; needed for no purpose except as a foundation for double commissions. The decree wound up with an order discharging the executors "except as hereinbefore stated and directed." Since under that exception they were still to account for receipts following the previous first of January, for the disposition of the $50,000 and for the whole remaining bulk of the estate as yet unconverted into money and undistributed, what is called the discharge amounted to nothing more than a settlement of a part of the executors' accounts. Soon after, they filed, what they term a supplemental account, in which they showed that as executors they had paid out, not only the $50,000 upon debts of the estate, but more than $183,000 beside; and while theoretically they did not have the money, and the trustees who did have it were not before the court, having filed no petition that we can discover, yet the surrogate did not hesitate to order the trustees to pay to the executors the $183,-000 and all the expenses and allowances of the accounting, and so assumed and recognized that the executors still retained the estate as such, and had it before the court, and subject to its order. The alleged separation did not exist in fact, but was purely formal and constructive, and inconsistent as a theory with the real action taken. No question before the surrogate and no official duty of his gave authority to construe the effect of the will upon the future attitude of the executors. If a question of distribution had been reached, and a separate and distinct trust fund, settled and fixed in amount, had been judicially constituted, and the order obeyed by a separate holding and investment, a very different case would have been

presented. For these reasons we are of opinion that double commissions ought not to have been allowed, and the plaintiff had no cause of action.

The judgment of the General and of the Special Terms should be reversed and judgment ordered for the defendants dismissing the complaint with costs.

All concur.

Judgment accordingly.