Dwight, J.
—The decree adjudged a final settlement of the accounts of the executors, and their discharge as executors, and that they henceforth retain and hold the corpus of the estate as testamentary trustees only. Accordingly it adjudged to them as executors full commissions—one-half for receiving and one-half for paying out — the entire corpus of the estate.
The value of the estate thus to be constructively turned over by the petitioners as executors to themselves as trustees, was adjudged to be $1,501,670.41 and the commissions allowed for such turning over amount to $22,787.55.
The principal questions raised by this appeal relate to the foregoing provisions of the decree.
Can the functions of executors under this will be sepa- • rated from those of trustees ?
Can the persons charged with the execution of the trusts, powers and duties of this will, be discharged as executors, before the final distribution of the estate %
Can the executors be allowed commissions for paying over and transferring the corpus of this estate to themselves as trustees ?
These questions are substantially one. The last is the practical question and that which, no doubt, gives rise to the controversy here.
The same questions have received the attention of the court of appeals m several lately adjudicated cases. They cover the whole ground and ought to settle the law. They at least limit our task to that of ascertaining what are the principles adjudged in them, and applying those principles to the case presented by the record before us.
In the case of Hurlburt v. Durant (88 N. Y., 121) the court found the surrogate ousted of jusisdiction by the answer of the defendant (under § 2718 of the code) and declined to pass, authoritatively, upon any of the questions here presented; but the opinion contains some dicta which have led to its being cited as authority by counsel on both sides in this appeal, and which have been more or less approved or explained by the same court in its later adjudications. Those later adjudications are found in the cases of Johnson v. Lawrence, 95 N. Y., 154; Laytin v. Davidson, id., 263, and Phœnix v Livingston, 101 id., 451.
The first of these cases is the one most nearly corresponding in its facts to the case at bar. It is the case in which the questions were most fully considered, and the rules therein adjudged were afterwards held to furnish the test to which the facts of the later cases must be subjected. It must, therefore, be quite sufficient for us to apply to the facts of this case the mies adjudged in Johnson v. Lawrence. It is impossible to state those rules more clearly or concisely *534 than in the language of the learned judge who delivered the opinion in that case. He says, “Where, by the terms or true construction of the will, the two functions with their corresponding duties co-exist, and run from the death of the testator to the final discharge; interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function should end and the other begin, double commissions or compensation in both capacities cannot be properly allowed. ” Again, after an examination of the case, including Hurlburt v Durant, supra, and explaining the approval in that case of the dissenting opinion in Drake v.Price, 5 N. Y.,430, the learned judge summarizes as follows: “ Taking the adjudged cases together they appear to establish that, to entitled the same persons to commissions' as executors and as trustees, the will must provide, either by express terms or by fair intendment, for the separation of the two functions and duties, one duty to precede the other and to be performed before the other is begun, or substantially so performed; and must not provide for the co-existence, continuously and from the beginning, of the two functions and duties; and that, when the will does so provide for the separate and successive duties, that of trustee must be actually entered upon and its performance begun either by a real severance of the trust fund from the general assets or by a judicial decree, which wholly discharges the executor and leaves him acting and liable only as trustee.”
Of course the contention of the respondents on this appeal receives no aid from the fact that a part of the decree complained of and appealed from in this case, assumes to affect such severance of the functions in question.
Under the rules above stated, if is not sufficient, to support that contention, that the two classes of duties presented by the will should be capable of separation, but the will itself must clearly provide for their separation.
It remains only to enquire what are the facts of this case to which these rules, so clearly stated, are applicable, and what is the result of such application.
By the terms of this will the disposition of the corpus of the estate is postponed to the termination of two specified lives in being. In the meantime the income is to be divided, semi-annually, mainly between the wife and children of the testator. At the termination of the two lives, or the earlier decease of the last survivor of his children, the estate is to be distributed, mainly, to his grandchildren and their descendants.
In the first clause of his will the testator gives his whole estate, except as otherwise provided: “To my trustees, *535 hereinafter named, in trust, nevertheless, for the uses and purposes, that is to say: I direct my executors and trustees hereinafter named * * * to retain my estate entire and undivided, until and except as hereinafter directed. And then follow the specific directions to his “executors and trustees,” in twenty clauses, or subdivisions of the first clause, of the will. Some of these directions are as follows:
“First. Pay my funeral expenses and my just debts and manifestly during the whole existence of the trust, all taxes legally assessed my estate, and all necessary repairs and reasonable insurance.
“Second. Pay to my sister Elizabeth Ann Hopkins an annuity of $200 a year, in semi-annual payments * * * during her natural life,” to cease, however, on the termination of the two lives, if she survive them.
“ Third. Give my wife Harriet, all pictures, books, household furniture, etc., etc., in my homestead dwelling-house at the time of my decease.
“ Fourth. Pay to my wife Harriet, one-sixth of the net annual income of my estate, in semi-annual payments, during her natural life,” to cease, however, as in the case of the sister.
Clause fifth is a precisely similar direction in respect to each of the daughters named.
Clause sixth is a direction to pay to his son Charles a part or, upon certain conditions, the whole of another sixth part of the net annual income of the estate, from which share, however, shall be deducted the rental value of certain real estate of which this son has the use, free of rent, with the specific direction that “ all taxes, etc., on all of the aforesaid real estate, if not paid by him, must first be paid by my executors and trustees out of his share of the income.”
Clause seventh directs the payment to another son, semiannually, of so much of the one-sixth of the net income of the estate, as shall be sufficient for purposes named, with , directions for the investment and accumulation of the surplus for the benefit of the children of this son.
Clause ninth is a similar direction in respect to a third daughter of the testator.
Clause eighth is a' direction to. give to this daughter certain specified articles of personal property.
“Fifteenth. The respective bequests and payments of income herein mentioned, I direct my executors to make semi-annually from the first day of the month next sue ceeding my decease.
“Sixteenth. Close up my entire estate and make distribution after the decease of my last surviving child,” if that *536 event shall precede the termination of the two lives, otherwise immediately upon such termination.-
_ In the twenty-first clause the testator repeats the gift, devise and bequest (contained in the first clause) of all his property to his trustees hereinafter named, in trust for the uses and purposes in the will expressed, and adds, “with power' to lease, sell, assign, transfer and convey the same, collect, invest and reinvest the proceeds thereof as they shall deem best for the interests of my estate, excepting only as herein otherwise provided.”
By the twenty-second clause the testator directs his executors and trustees to keep a set of books and make correct and plain entries in them of every transaction relating to his estate, and allow them to be examined at all business hours by all persons interested.
And finally, by the twenty-third and last clause of his will, he nominates and appoints four persons, named,_ as ‘ ‘executors of this my last will and testament, for executing the trusts of said will; and every material transaction in the settlement of my estate and in the execution of the trusts hereby created shall reqxiire the assent of at least three of my said executors.”
A codicil revokes the appointment of one of the four persons named as executors. Letters testamentary were granted to the other three and they are the respondents on this appeal.
In the same clause (twenty-third), he appoints his “ said executors above named, trustees for the purposes herein named,” and declares that nothing in this will shall be so construed as to empower any action by my said executors after the decease of the two persons upon whose lives the suspension of alienation is limited, except to close their trust.
It seems to require no more than this simple analysis and recapitulation of the provisions of the will to demonstrate that, in the mind of the testator, there was no separation of the functions of executors and trustees; that those functions were throughout intended to be co-existent and co-terminous; that there was no point of time at which “in the testamentary intention ” the one should end and the other begin; that- the will does not provide for the separate and successive duties, but that the trust duties and those of the executors have co-existed from the issue of letters testamentary to the present time, and will so co-exist down to the final execution of all the powers and duties created and prescribed by the will; or, in the words of the will itself, when the executors shall “close their trust.”
Apparently the designations “executors,” “trustees” and ‘ ‘ executors and trustees, ’ ’ were often used by the tes. *537 tator as synonymous or convertable terms, with this discrimination, that he conceived that the function of taking and holding title, in trust, of selling and conveying property, and of collecting, investing and reinvesting the proceeds, was one which rendered the use of the designation “trustees” appropriate if not necessary. Whereas it is clear that he believed and intended that all the powers and duties connected with the division and distribution of his property—both of the income and the corpus of the estate; all the exercise of judgment and discretion in giving and withholding; all the enforcement of conditions prescribed and of terms imposed; in short all duties under the will except those of taking, holding and managing the property and funds of the estate during the existence of the trust, should and would be performed by the executors of his will as such. And these two classes of duties are necsesarily co-existent from the beginning of administration to the end of the final distribution of the estate.
We think this case, under the rules established in Johnson v. Lawrence (supra), clearly one in which there is and can be no separation of the functions of trustees and executors, and that the decree was erroneous, so far as it assumed to make or recognize such separation.
This conclusion disposes of the question of the allowance of commissions to the executors for “paying out” the corpus of the estate to themselves as. trustees.
The remaining questions, raised by exceptions of the appellant, relate to the allowance to the executors of half commissions for receiving the corpus of the estate, computed at the inventory value of the property and securities which have come into their hands; and to the provision of the decree charging commissions on income, received and paid out, upon the income itself and not upon the general estate.
The amount upon which commissions for receiving was allowed, was $1,154,935.56. This was made up of the footings of the four schedules A, B, O and C. Schedule A consisted of cash received on sale of personal property and debts collected. Schedule B included the price of two parcels of real estate sold—one at $20,000, of which $6,000 remained unpaid, secured by bond and mortgage; and the other at $14,500, which was received in cash. Schedule C consisted of securities—bonds and mortgages, railroad bonds and certificates of indebtedness and of stock —amounting, at their inventory value to $1,107,530.91, and all remaining on hand at the date of the accounting. Schedule C consisted of a single item of $600, the appraised value of a piano and its appurtenances, which the execu *538 tors, under a direction of the will, had delivered to a daughter of the testator.
No question can be made as to the allowance of the one-half commissions for receiving the moneys shown by schedule A, and the cash actually received (schedule B) on the sale of real estate (Phœnix v. Livingston, 101 N. Y., 451), and no question is made in respect to the commissions on specific personal property delivered to a beneficiary (schedule C).
We suppose that the bond and mortgage of $6,000,. received as part of the price of real estate sold (schedule B), may be consigned to the same category with the large amount of securities which compose schedule C. And we have reached the conclusion that commissions cannot be allowed at this time for receiving those securities. The claim for commissions seems to be prematurely made. Whenever those securities are collected, or otherwise converted into money, commissions will be allowed on the money so received; whenever they are distributed, commissions will be allowed both for receiving and paying out the amount of money for which they stand in the distribution; but so long as they remain uncollected and undisposed of, they cannot be said to represent “sums of money received ” by the executors.
In the case of Phœnix v. Livingston (supra), the court of appeals held that commissions for receiving were not chargeable on real estate unsold, expressly disapproving Wagstaff v. Lowerre (23 Barb., 209), and other cases in the supreme court and surrogate’s court in the city of New York-which had followed that case as authority, and plainly declaring its own purpose not to wander from the statute nor to strain its construction.
In the same case Finch, J., premising that all authority to grant compensation to executors and trustees was derived from the statute, and that the statute must govern in determining what allowance, if any, is to be made, goes on to say:
“Sums received and paid out are made the basis of computation. It has nevertheless been held that securities received by an executor and by him turned over to the parties entitled, might be treated as money received and paid out * * * . This was itself an extension of the authority of the statute, justified by the consideration that what was accepted as money by the parties interested, might well be treated as such for purposes of computation.”
This case we regard as authority for the suggestion, made above, that this claim to commissions on the securities in the hands of the executors is premature. Indeed, we think it improbable that the claim would have been made at this *539 time but for the attempt to sever the functions of executors from those of trustees and effect a constructive transfer of these securities from the former to the latter.
The question was raised by exception, but not presented by the appellant on the argument, whether the commissions allowed on income received and paid out should be charged upon the income itself or upon the general estate. Upon that question the authorities cited by the respondent seem to indicate a settled practice in accord with the provisions of the decree in that respect. Lansing v. Lansing, 45 Barb., 182; Drake v. Price, 5 N. Y., 430; Whitson v. Whitson, 53 id., 481.
This, we believe, disposes of all the questions which are properly before us on this appeal.
This result is so radical a disturbance of the principles, upon which the present decree was founded, that we have thought it best not to attempt its modification but to reverse the decree and remit the proceeding to the surrogate’s court of Monroe county for a re-hearing and a new decree in accordance with the views here expressed.
All concur.
Decree reversed and proceedings remitted to the surrogate’s court of Monroe county for a re-hearing, with costs of this appeal to the appellant to be paid out of the estate.