VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment and order reversed and new trial granted, with costs to the appellant to abide event.

---

DAVID WOLFE BRUCE AND OTHERS, AS EXECUTORS OF CATHARINE L. WOLFE, AND AS DONEES UNDER HER WILL OF A POWER IN TRUST, AND INDIVIDUALLY, RESPONDENTS, *v.* PETER LORILLARD AND OTHERS, APPELLANTS, IMPLEADED WITH OTHERS, DEFENDANTS.

*Executors — compensation of, when acting as donees of a power in trust attached to their office.*

The will of one Catharine L. Wolfe contained many specific bequests and devises, and then devised and bequeathed all the rest of her estate, real and personal, to eighteen cousins, share and share alike. In order to enable her executors to provide for the payment of the pecuniary legacies the will gave them, for that purpose only, a power of sale of any real estate not specifically devised. It further authorized them to make partition of the real estate among the persons entitled to shares, and to that end to appoint three commissioners to appraise, allot and set apart said shares, and upon the completion of the allotment it empowered the executors to convey,

Commissioners were appointed under this provision of the will, and after an allotment had been made the executors rendered valuable services in regard to the real estate and its conveyance. The real estate was worth nearly one million and a half dollars.

Upon an application by them for compensation, beyond their fees as executors, for such services:

*Held,* that it must be denied; · that the real estate vested at once in the devisees, subject to the power of sale.

That the power in trust was attached to the executors' office, and that there was no statutory authority for the allowance of any compensation to executors beyond their legal fees.

APPEAL by the defendants, Peter Lorillard, Jacob Lorillard, Catharine L. Kernochan, Mary L. Barbey, Eva L. Kip, George L. Ronalds and James P. Kernochan and others, executors of Lorillard Spencer, deceased; Ronald Thomas, Addison Thomas, George L. Thomas, Catharine d'Anglemont, Peter L. Ronalds, Alfred P. Conkling, Howard Conkling and Laura R. Conkling, from certain parts of a judgment, entered, after a trial by the court at the New York Special Term, in the office of the clerk of the city and county of New York on the 3d day of February, 1891, to wit, from findings of fact in these words:

*Ninth.* The power vested in the executors in question was beyond that of the mere appointment of commissioners to make partition and division, and beyond the mere work of executing deeds of partition ; the value of their services was no less, and their labor and responsibility were far greater in fulfilling the trust by revising, modifying and correcting the valuations, appraisals and allotments of the commissioners, than in the performance of an ordinary power of sale, or in fulfilling an ordinary trust or selling real estate and dividing the proceeds.

*Tenth.* The title to the several shares of real estate did not, under the will, vest absolutely in the parties described in the nineteenth item of the will.

The commissioners appointed by the executors under the twenty-first item could not vest any title in the said parties; the will required for the vesting of the several shares in them the action, the decision and the deed of the executors. Without the action of the executors the parties entitled under the nineteenth item could not obtain the absolute enjoyment of the real estate devised. A deed from the executors was essential to complete the title.

*Twelfth.* Reasonable compensation for such services as the plaintiffs rendered in dividing the said real estate under the circum-

stances set forth in the preceding findings of fact, is at the rate of one per cent upon the entire value of the property so allotted for each of said executors.

Also from a conclusion of law in these words :

*Third.* The plaintiffs are further entitled to receive the sum of $14,720 each, being one per cent upon the value of the residuary real estate left by the testatrix, and divided by them among the residuary devisees in pursuance of the power vested in them by the will. Also

From so. much of the ninth conclusion of law as finds that the plaintiffs are entitled to judgment, embodying any part of the findings of fact and conclusions of law hereinabove appealed from, and authorizing them to retain any compensation whatever for dividing the real estate, or any part thereof ; and also from such part of the adjudication of said judgment as adjudges that plaintiffs are entitled to any compensation whatever calculated upon the value of the real estate, and more particularly to these words : " And it is further ordered that the plaintiffs be, and they hereby are, permitted to retain from any funds in their hands and belonging to said estate * * * the further sum of $14,720 for each of the plaintiffs, which is 'one per cent upon the value of the residuary real estate left by the testatrix and divided by the plaintiffs among the residuary devisees in pursuance of the power conferred upon the plaintiffs by said will."

*J. F. Kernochan* and *Tillotson & Kent* and *A. R. Conkling,* for the appellants.

*H. H. Man* and *J. M. Bowers,* for the respondents.

ANDREWS, J. :

The plaintiffs are the executors of the will of Catharine L. Wolfe, deceased, and this action was brought to settle their accounts. The case was sent to a referee to take and state the accounts of the plaintiffs as such executors, to take testimony as to any question which might arise on said accounts, and to report the testimony taken and the accounts, with his opinion as to the questions of law and fact involved therein. Such testimony was taken, and the referee having made his report, the action was brought to trial at'the Special Term.

The referee allowed the plaintiffs commissions on all moneys actually received and paid out by them, and also allowed each executor one per cent on the value of certain real estate which was appraised at $1,472,000.

The Special Term adopted the views set forth by the referee in his report, and a judgment was entered which, amongst other things, provided for the retention by each of the plaintiffs of the sum of $17,449.95 as commissions on personal property; and the further sum of $14,720, which was one per cent on the value of such real estate; and from so much of the judgment as awarded commissions upon the value of the real estate, this appeal is taken.

We are unable to concur in the view taken by the learned referee and the court below, as to the commissions allowed upon the value of the real estate. Originally a person acting in a fiduciary capacity was not entitled to receive any compensation for his services in the administration of the trust. (*Manning* v. *Manning*, 1 Johns. Ch., 534.) In 1817 the legislature passed an act allowing the Court of Chancery, on the settlement of the accounts of guardians, executors and administrators, to make a reasonable allowance to them for their services over and above their expenses. (Chap. 251, Laws of 1817.) That court thereupon adopted a rule allowing guardians, executors and administrators a certain percentage upon all sums of money received and paid out by them. (3 Johns. Ch., 630.) Subsequently the legislature passed a law which contained substantially the same provisions as the rule of court, and which as amended is now in force. (R. S. [8th ed.], vol. 4, pp. 2564, 2565.) The court afterwards construed this statute as applying to committees of lunatics (*Matter of Roberts*, 3 Johns. Ch., 43) and to assignees and trustees of all kinds. (*Meacham* v. *Sternes*, 9 Paige, 393.)

It was also held by the Court of Chancery that where an executor, instead of collecting in the money due upon good and collectible securities, for the benefit of the legatees, transfers such securities to a third person for the use of such legatees, with their assent, he was entitled to the same commissions as if he had actually received and paid over the money.

The legislature subsequently amended the statute so as to allow separate commissions to each executor in certain cases (Laws of 1863, chap. 362); and also conferred upon the Surrogate's Court

the power to take and state the accounts of testamentary trustees (Laws of 1850, chap. 272); and upon the settlement of such accounts to award the same commissions as were awarded in similar cases in the Supreme Court. (Laws of 1866, chap. 115.)

The statutes above mentioned are the only ones which, in this State, authorize the payment of executors and trustees for their services as such; and the question presented is whether the plaintiffs, by virtue of the services which they rendered in regard to the residuary real estate of the testatrix, can be regarded as having received and paid out said sum of $1,472,000. The question of the compensation of executors and trustees has frequently been before the courts, but no case is referred to in the briefs of counsel, nor do we know of any in which the facts involved were precisely similar to those presented in the case at bar.

The will of Miss Wolfe contained many specific devises and bequests, and then all the rest of the estate, both real and personal, was devised and bequeathed to eighteen of her cousins, share and share alike. To enable the executors to provide for the pecuniary legacies and requirements of the will (but for that purpose only) they were given by the twenty-first clause thereof an unqualified power of sale of any real estate which belonged to the testatrix in her own right and was not specifically devised. The said twenty-first clause also contained the following: "I also authorize and empower them to cause just partition to be made of any real and personal estate herein disposed of to and among the several persons who may be or become entitled to undivided shares of or in the same under the provisions of this my will; and for the purpose of making partition of any such estate they shall have power in each instance to appoint, under their hands and seals, three suitable persons as commissioners to appraise, allot and set apart, as may be just and equitable, the respective shares of such estate to the parties entitled thereto; and upon completion of such allotment, and when the same shall have been approved by my executors, I empower them to carry the same into effect by executing and delivering to the respective parties entitled to such estate all such declarations of allotment, or such releases, conveyances or transfers as may be suitable for that purpose; and if any piece or parcel of property shall be of such disproportionate value that, in the judgment of such

commissioners or of my executors, it cannot properly be allotted to any one share, they may, in their discretion, allot it in undivided parts to two or more shares. And I further provide that, after such commissioners shall have made such valuations and allotments as nearly equal or equitable as the circumstances may admit, they shall have power, in order to produce more entire equality, to award such sums out of any funds hereinbefore provided for that purpose as, in their judgment, may be necessary to be made by any or either of the persons taking any of such shares to any or either of those who may take any other share or shares; and they may also, if necessary, charge any residue of any such payments upon any share or shares of the real estate to be allotted by them as aforesaid."

Under the provisions of the will above stated, the residuary real estate vested in the devisees named in the twentieth clause, and the executors were made the donees of a power in trust. The executors executed the powers conferred upon them by the twenty-first clause of the will, by appointing three commissioners to make partition of such residuary real estate, and subsequently did execute and deliver to the respective parties such declarations of allotment or transfers as were considered suitable to carry into effect the provisions of the will.

It appears to be conceded upon the papers before us that the executors devoted a good deal of time to this matter; and that if the court had the power to allow them any compensation for their services in relation to the real estate, the amounts that were allowed by the referee and the court are not unreasonable. But the difficulty about the matter is, that, assuming that the claim of the executors to be paid for such services is a meritorious one, we can find no provision in the statutes which authorizes the court to make any allowance at all; nor is there any reported case in which it has been held that, upon a similar state of facts, executors were entitled to compensation for such services by virtue of the provisions of the statutes above stated; or that the court upon a similar state of facts had the power to authorize them to retain money in their hands as compensation for such services.

In the case of *Collier* v. *Munn* (41 N. Y., 143) one of the executors was an attorney-at-law, and, at the request of his co-executors and some of the legatees, had rendered services for the estate. There was no dispute as to the necessity or the value of the services,

and it was not contended that the amount claimed was more than a reasonable compensation.   Nevertheless, the executors claim for services was disallowed by the surrogate, and the decree which disallowed the claim was affirmed by the General Term and the Court of Appeals upon the ground that the percentages allowed by the statute were the limit of the compensation which the executor could receive for all the services rendered by him in relation to the trust estate.

In the case of *Lent v. Howard* (89 N. Y., 169), upon which counsel for the executors largely rely, it was held by the Court of Appeals that an executor, who had performed services in relation to real estate devised by the will of which he was an executor, might and should receive reasonable compensation for such services; but in that case the services performed were not devolved upon the executor by the will.

The executors were given the power to sell the real estate and convert the same into money, but they did not do so.   The property consisted partly of real and partly of personal estate.   There were two executors, and one took charge of the personal property, and the other of the real estate, which consisted of five farms.   The executor who had charge of the farms was a farmer, and he assumed the control and management of such farms and continued in charge, working the same and receiving the rents and profits for about fifteen years.   All this was done with the consent of all the parties in interest and for their benefit; and it certainly would have been a case of very great hardship if the executor in that case could not have received compensation for such services.   The Court of Appeals recognized the rule that an executor cannot receive for his services, *as such*, anything beyond the percentages allowed by the statute.   But they held that, in that particular case, the executor who had managed the farms ought to receive a reasonable compensation out of the gross rents and profits of the real estate which he had managed, placing their decision, apparently, upon the ground that such services were no part of his duty as executor, but not stating from what sources the court derived the power to grant such compensation.

The court said : " The principle is that for the personal services of an executor or trustee in the discharge of executorial duties or

those which pertain to his trust, the commissions allowed by law are deemed to be a full equivalent. We are not disposed to impair the force of this salutary rule although in some cases the statutory compensation may be quite inadequate. But we think the rule does not fully or justly apply to the claim of the defendant Bailey to be allowed out of the gross rents and profits of the real estate a suitable compensation for services in the nature of a charge thereon for his labor expended in producing them. It was no part of his executorial duty to spend his time and labor in conducting the business of carrying on the farms. Clearly there can be no ground for claiming that he owed any duty whatever in respect to the homestead farm, but, as has been said, this farm was managed in the same way as the rest. The executors were not entitled to the possession of the testator's real estate. The control and management was apparently surrendered to Bailey by the consent of all the parties in interest. In accounting the executors should be charged with the net income and profits, and we think that a reasonable compensation to Bailey for his services and labor is a proper element to be considered in ascertaining them."

Evidently the Court of Appeals thought that case could be distinguished from the case of *Collier* v. *Munn* (*supra*), for it is stated in the opinion that an executor will not be allowed compensation for his own services as attorney in the affairs of the estate, and said case of *Collier* v. *Munn* is cited as an authority for that proposition; and we do not see how the decision in *Lent* v. *Howard*, helps the case of the plaintiffs, for in that case the services rendered were not devolved upon the executor by the will itself, nor were they those which the executor was under any obligation whatever to perform. Whereas, in the case at bar, the services about the real estate, for which compensation is claimed, were expressly devolved upon the executors by the will itself, and as they undertook the execution of the will, they were in duty bound to perform such services, whether they could receive compensation therefor or not.

There are other cases in which it has been held that persons named in a will as executors were also entitled to compensation as trustees (*Johnson* v. *Lawrence*, 95 N. Y., 154; *Laytin* v. *Davidson*, 95 id., 263; *Phœnix* v. *Livingston*, 101 id., 451), but none of these cases support the claim of the plaintiffs. They were all cases in which

there was a plain separation of the duties devolved by the will upon the plaintiffs therein as executors and those devolved upon them as trustees; and the duties as trustees involved labor and responsibility for years after the duties as executors had been entirely performed, and after the estate had been transferred from the individuals named as executors to themselves as trustees. In the present case the executors were the donees of a power in trust, and it was absolutely necessary that they should execute such power in the performance of their duties as executors; and it is impossible to sustain the provisions of the judgment granting them compensation for services about the real estate upon any theory that they were entitled to it as trustees, for they had no title to the real estate.

In the case of *Phœnix* v. *Livingston* (101 N. Y., 451), the facts were not precisely similar to those in the case at bar, but the reasoning of the court is applicable, and it seems to us must be regarded as fatal to the claim of the plaintiffs. In that case the individuals named as executors were also named as trustees in the will, and the court held that they were entitled to double commissions. Part of the property disposed of by the will was real estate, the fee of which vested in certain grandchildren, by force of the will, at the death of the testator. The will gave the executors the power to sell and to rent such real estate, and they did, in fact, manage such property for a series of years, receiving the rents and profits thereof, which were applied to the maintenance of certain trusts created by the will. On the termination of the trust there was a large amount of land which had not been sold, and it was claimed that the trustees were entitled to commissions upon the value of that land.

The Court of Appeals, however, held that commissions could not be allowed upon the value of such lands, but must be limited to percentages upon the amounts of money actually received and paid out by them. FINCH, J., speaking for the court, said: "We ought not to wander from the statute and strain its construction to an extent approaching perilously near to legislation. In the present case the fee of the lands, it is conceded, vested in the grandchildren, by force of the will, at the date of the death of the testator. The estate of the trustees took priority but only for purposes of the trust. (*Stevenson* v. *Leslie*, 70 N. Y., 512.) They were authorized to sell and to rent the real estate. Upon all sums of money thus realized

and passing through their hands they were entitled to commissions, but the unsold lands at the close of the trust passed to the possession of the remaindermen, not through any title derived from the trustees, but by force of the original devise. The trustees transferred no land, but simply refrained from exercising their power of converting it into money; and so they not only never paid it out, even constructively by any grant or conveyance, but never even received the absolute fee which all the time was a vested interest in remainder. Their estate was simply commensurate with their trust, bounded as to the duration by the terms of the trust, and as to the unsold lands never equaling in value that of the fee." The counsel for the plaintiffs seek to distinguish the case at bar from that of *Phœnix* v. *Livingston*, because of the fact that the executors in the case at bar did execute declarations of allotment and transfers of the real estate as required by the will, and he claims that, therefore, it must be considered that, constructively, they did receive and pay out an amount of money equal to the value of such real estate. This is a plausible argument, but it does not seem to us to be sound. We do not see how the executors can be regarded as having constructively received and paid out an amount equal to the value of the land when they had no title whatever to the land itself. The fee was vested in the devisees named in the will, and the executors were merely the donees of a power in trust. But, even if the case of *Phœnix* v. *Livingston* is not regarded as entirely conclusive against the claim of the plaintiffs, it certainly must be regarded as exceedingly unfavorable to such claim.

The opinion of the learned referee, to whom the case was sent, indicates that he thought that the plaintiffs had rendered services about the real estate for which, upon the merits, they ought to be compensated, but that he was somewhat embarrassed to find authority of law for allowing such compensation is apparent. He refers to the case of *Phœnix* v. *Livingston* (*supra*), but thinks the case at bar can be distinguished from that one, because the several shares of real estate did not, under the will, vest absolutely in the parties mentioned in the nineteenth clause thereof, and that something was required, to wit: An active approval and making of the allotments by the executors, and a deed by them. The two cases are undoubt-

edly distinguishable in the manner suggested by the referee, but that does not materially aid the plaintiffs. The fact that the cases differ somewhat leads to the result that *Phœnix* v. *Livingston* is not conclusive against the plaintiffs, but that fact does not weaken the force of the reasoning of the court in that case.

The referee also found a further reason for allowing commissions to the plaintiffs, in the consideration that the adoption of a rule that commissions should not be allowed to executors in such cases would array the interest of executors against their duties and destroy their freedom of action, and that executors would be induced to exercise the power of sale vested in them unnecessarily, and against the interest of *cestui que trusts*, for the purpose of earning their commissions.

If an application were made to the legislature to change the statute so as to allow commissions in cases like the one now before us, it would be proper to call the attention of that body to these considerations, and it is possible the legislature would deem them of such weight as to require that the statute should be so amended. They are not considerations, however, which will justify the court in adopting a construction of the statute which is not warranted by its terms, or justify it in itself amending the statute without the intervention of the legislature.

The learned referee, however, finally based his decision upon the following ground: "I am of opinion plaintiffs are entitled to statutory compensation for their services by reason of the terms of the will, because a necessary division and conveyance of the real estate in kind to the devisees is equivalent to the exercise of a power of sale and a division of the proceeds." In placing his decision upon this ground the learned referee doubtless had in mind the decision of the Court of Chancery in the case of *Cairns* v. *Chaubert* (9 Paige, 160), in which executors were allowed commissions upon personal securities which they had distributed without converting the same into cash. That decision itself involved a very liberal construction of the statute, and, in fact, it might be said, an amendment of the statute. But in that case, however, the title of the securities was vested in the executors. They had the power to sell the securities, and it would have been their duty to sell the same but for the consent of the parties in interest that they should be assigned to a trust

company without a sale. In the case at bar the title to the real estate was not vested in the executors, but in the devisees. The executors had the power to sell to provide money for the pecuniary legacies, and to carry out some other requirements of the will; but their duty as to the bulk of the real estate was *not* to sell it, but to cause it to be partitioned, and it would have been a violation of their duty if they had sold it.

It may very well be that the services rendered by the plaintiffs about the real estate ought to be declared by statute to be equivalent to the receiving and paying out of money upon the sale of such real estate, but the statute does not declare it to be such equivalent, and for the court to construe the statute in such a manner as to make them equivalent would be not only as the Court of Appeals said in *Phœnix* v. *Livingston,* " perilously near legislation," but would be actual legislation.

The learned judge before whom the case was tried at Special Term filed a brief memorandum which contains, among other things, the following : " I am satisfied with the reasoning of the learned referee and deem it unnecessary to add anything to his opinion upon the main question presented to him." He may have been influenced in his conclusion, as the referee apparently was, by the fact that the plaintiffs had rendered services, and that the only way in which they could be remunerated for the same was by adopting the construction of the statute which was placed upon it by the referee. We might also be willing to adopt that construction so far as the merits are concerned, if we felt at liberty to do so, but as we think that such construction is inadmissible, so much of the judgment at Special Term as awarded $14,720 to each executor for services in relation to the real estate should be reversed, with costs.

VAN BRUNT, P. J. :

The construction which was put upon the assignment act, in which language similar to that used in the Revised Statutes in reference to compensation of executors, in the case of *Matter of Assignment of Hulburt et al.* (89 N. Y., 259) is in accord with the views expressed in this opinion. I concur.

So much of judgment at Special Term as awarded $14,720 to each executor for services in relation to the real estate reversed, with costs.