### In re BENNETT'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. December 15, 1896.)

1. EXECUTORS—COMMISSIONS AS TRUSTEES.
   Where a will gives to the executors the management of testatrix's estate, and directs them, as trustees, to use so much thereof as they deem necessary for her husband's support, and makes other disposition of what is not so used, and the executors expend only a small amount for the husband's support before his death, they are not entitled to commissions as trustees on the whole estate, in addition to their commissions as executors.

2. SAME—PERSONAL LIABILITY FOR COSTS.
   Executors are personally liable for costs, when they appeal, in their own interest, from a settlement of their accounts.

Appeal from surrogate's court, Erie county.

Judicial settlement of·the accounts of Spencer Clinton, Truman G. Avery, and Georgiana W. Jenks, as executors of the will of Harriet A. Bennett, deceased, in which Clark H. Timerman appeared as special guardian for the infant legatees. From a decree disallowing a claim of the executors for commissions on the entire estate, both as executors and testamentary trustees (38 N. Y. Supp. 945), the executors appeal. Affirmed.

February 2, 1894, Harriet A. Bennett died, leaving a will, executed September 15, 1891, by which the appellants were nominated as executors, which was duly probated April 23, 1894, and letters testamentary issued thereon to the executors therein nominated, who immediately entered upon the discharge of their duties, and are now engaged in discharging their duties as executors. By the first paragraph in the will the testatrix directs the payment of her debts and funeral expenses. By the second paragraph she bequeaths various articles of personal property. The remainder of the estate is then disposed of as follows:

"Item Third. I give, devise, and bequeath all of my estate, both real and personal, including all claims and demands which I may possess, not hereinbefore devised, to my executors, hereinafter named, as trustees, to have and to hold the same upon the following trusts: To apply the income thereof, and so much of the principal thereof as in their judgment shall be judicious, for the care, support, and maintenance of my husband, David S. Bennett; and I give them full power and authority to use the whole of said principal and income for that purpose if, in their judgment, it shall be advisable to do so to secure his happiness and comfort.

"Item Fourth. I direct my said executors to dispose of the residue of my estate,—that is, that portion of my estate which shall not be used for my husband's benefit, or heretofore devised,—as follows: (1) I authorize, empower, and direct my executors, as soon after my decease as they shall deem to be for the interest of my estate, to sell my real estate in such manner and on such terms as they shall think best, and to execute and deliver to the pur-

chaser or purchasers thereof good and sufficient deeds of the same; and until such sale, in their discretion, to let or lease the same. or any part or parts thereof, to collect the rents thereof, and to take proceedings to dispossess or eject any tenant or occupant thereof, to repair and insure the same, to pay all taxes and assessments imposed thereon, to rebuild the same in case of the injury or destruction thereof, or any part thereof, by fire or otherwise, and to mortgage the same, or any part or parts thereof, as many times as they shall deem necessary or advisable.    (2) I also authorize and empower my executors, in their discretion, to continue, conduct, and carry on any business or businesses, and especially the grain-elevating business, in which I may be engaged at the time of my death, until the same should, in their judgment, be wound up, or until the real estate in which it is carried on, or which pertains to it, is sold; and to employ in such business or businesses so much of my estate as may, in their judgment, be necessary.    (3) I also authorize and empower my executors, in their discretion, to apply any money which may come to their hands, whether principal or income, to the payment or reduction of the principal of and interest on the incumbrances on my real estate.

"Item Fifth. Out of the proceeds and conversion of the sale of my personal and real estate I direct my executors to pay" (then follow bequests to various legatees, and a residuary clause disposing of the entire estate).

November 6, 1894,—nine months and four days after the death of the testatrix,—David S. Bennett, her husband, died.    Between the date of the death of the testatrix and the date of his death the executors expended for his care, support, and maintenance $2,575.29.

The testatrix left a personal estate valued at $66,269.29, and a real estate valued at $500,000, making a total of $566,269.29; the gross income of which between the date of the death of the testatrix and November 1, 1895, the date of the executors' account, was $94,606.21.

November 14, 1895, the appellants verified and filed a petition praying for a decree judicially settling their accounts as executors. An accounting was had, and it was adjudged that the executors should be charged and credited as follows:

| | | |
|---|---|---|
| For moneys received........................................ | | $160,905 50 |
| Credited for money paid out.................... | $126,859 63 | |
| Cash on hand.................................... | 34,045 87 | |
| | | $160,905 50 |

The sum of $2,575.29, expended for the support of David S. Bennett, is included in the item $126,859.63, money paid out.

Each appellant was allowed commissions as executor, as follows:

| | | |
|---|---|---|
| 5 per cent. on.................... | $  1,000 00 | $    50 00 |
| 2½ per cent. on................... | 10,000 00 | 250 00 |
| 1 per cent. on.................... | 115,859 63 | 1,158 59 |
| Amount paid out................. | $126,859 63 | Commissions $1,458 59 |

Each appellant was allowed commissions as testamentary trustee on $2,575.29, the amount expended for the support of David S. Bennet, as follows:

| | | | |
|---|---|---|---|
| 5 per cent. on........................... | $1,000 00 | $50 00 | |
| 2½ per cent. on........................... | 1,575 29 | 39 38 | |
| | | | 89 38 |
| | $2,575 29 | | |

Total commissions allowed each appellant as executor and as testamentary trustee ........................................... $1,547 97

$4,643.91 were allowed the three appellants for their commissions as executors and as testamentary trustees.

Argued before HARDIN, P. J., and FOLLETT, WARD, and GREEN, JJ.

Adolph Rebadow, for appellants.

Sidney W. Petrie, for respondent.

FOLLETT, J. The commissions of executors are fixed by section 2730 of the Code of Civil Procedure, which, among other things, provides:

"If the value of the personal property of the decedent amounts to one hundred thousand dollars, or more, over all his debts, each executor or administrator is entitled to the full compensation on principal and income allowed herein to a sole executor or administrator, unless there are more than three, in which case the compensation, to which three would be entitled, must be apportioned among them according to the services rendered by them, respectively, and a like apportionment shall be made in all cases where there shall be more than one executor or administrator."

Subdivision 6 of section 2514 of the Code of Civil Procedure provides:

"(6) The expression, 'testamentary trustee,' includes every person, except an executor, an administrator with the will annexed, or a guardian, who is designated by a will, or by any competent authority, to execute a trust created by a will; and it includes such an executor or administrator, where he is acting in the execution of a trust created by the will, which is separable from his functions as executor or administrator."

By section 2802 of the Code of Civil Procedure testamentary trustees are entitled to the same commissions as executors.

The personal estate of the testatrix did not amount to $100,000, and realty of the value of at least $500,000 was unsold when the accounting was had. The surrogate's court held that the will converted the realty into personalty, out and out, as of the date of the death of the testatrix, and that the executors took the entire estate as personalty, that it was to be administered as such, and that for the purpose of determining the amount of the commissions the entire estate was to be treated as personalty, and every one of the appellants was entitled to full commissions as executor and as testamentary trustee on the amount paid out in each capacity. The special guardian not having appealed, we cannot determine whether each appellant was entitled to full commissions on $126,859.63, the amount paid out as executors; or whether each appellant was entitled to full, or any, commissions as testamentary trustee on $2,575.29, expended in the support of David S. Bennett. In McAlpin v. Potter, 126 N. Y. 285, 27 N. E. 475, the court of appeals, following the earlier cases of Johnson v. Lawrence, 95 N. Y. 154, and Laytin v. Davidson, Id. 263, has laid down a rule for determining whether a person is entitled to commissions as executor and as testamentary trustee for administering the estate in the following clear and explicit language:

"Both cases agree in the rule that double commissions to the same persons, first in the character of executors and then in that of trustees, are to be awarded only when the will contemplates a several and separable action in each capacity, not at the same but different stages of the administration, and that they are not to be allowed where the will makes no such separation, but blends

the two duties and commingles them without a severance. To the ordinary duties of an executor may be added the performance of a trust in such a manner that the two functions run on together. It is the duty of an executor as such to pay to a legatee the amount of the legacy in the manner and at the time provided by the testator, and it does not change that duty that the payment of the principal is postponed, and the income made payable annually in the meantime. A trust duty may thus be imposed upon an executor, which thereby becomes and is made a function of his office. A will must go further than that to admit of double commissions, and must clearly and definitely indicate an intention of the testator to end the executor's duty at some point of time, and require him thereupon to constitute and set up one or more several trusts, to be held and managed as such for the interest of the beneficiary."

I find nothing in the will which would justify the conclusion that the testatrix intended that the appellants should act in two distinct and separate capacities as executors and testamentary trustees, during the lifetime of her husband, or solely as testamentary trustees during his life. On the contrary, it is plain, I think, from the face of the will, that she intended them to act from the beginning to the end as executors, and that they should, as an incident of their executorial duties, expend so much of the income and such part of the principal as should be required to maintain her husband during his life. By the first, second, and third subdivisions of "Item Fourth," the appellants, as executors, are authorized to continue the business of the estate until its final settlement, and are authorized to mortgage, lease, or sell any part or all of it, from time to time, as they shall deem best. This power existed during the lifetime of David S. Bennett, and now exists. The income from which they were to support the husband was received as executors, and, if any portion of the body of the estate was to be sold, and the avails applied for this purpose, it was to be done by them as executors, and not as testamentary trustees. So much for the intention of the testatrix. Under this will it was not possible for the executors to discharge all of their executorial duties under the first and second clauses, and then hold the estate as testamentary trustees for the benefit of David S. Bennett, unconnected with executorial duties. For, as before shown, the business was to be carried on by the appellants as executors, and the estate was to be wholly managed by them as executors. It was not possible for them, under this will, to have had a judicial settlement of their accounts as executors, and then to set apart and to have held the remainder of the estate solely as testamentary trustees during the life of David S. Bennett, and then, after his death, have taken up and concluded their duties as executors. The will does not empower them to separate their duties. Nor have the appellants acted upon this theory. They have kept no accounts as testamentary trustees, have not sought an accounting as such, nor have they done any act which, by the most liberal construction, can be called an act of testamentary trustees, except to expend $2,575.29 for the support of David S. Bennett, on which sum each has been allowed double commissions as executor and as testamentary trustee. Article 2 of title 4 of the Code of Civil Procedure provides for an accounting by executors, and title 6 provides for an accounting by testamentary trus-

tees.    The appellants have not applied for an accounting as testamentary trustees, but for an accounting as executors.

Assuming that under a proper petition the two accountings may be combined, and double commissions allowed, there is no mention in the petition filed that the appellants had acted as testamentary trustees, or that an accounting in that capacity would be asked for. The accounts contained in the record are their accounts as executors, and not accounts as testamentary trustees.    The expenditure of $2,575.29 for the support of David S. Bennett is included in the appellants' accounts as executors, which shows how they understood and discharged their duties.    There is nothing in the accounts rendered, or in the record, showing that these appellants rendered distinct services in both capacities.    No error was committed by the surrogate's court as against these appellants.

This appeal having been prosecuted by the appellants, not in the interest of the estate, but in their interests as individuals, they should pay the costs.    That part of the decree of the surrogate's court which is appealed from should be affirmed, with costs against the appellants personally.    All concur.